S. B. STREET *v.* CITY OF COLUMBUS.

TAXATION.    *Sixteenth sections.    Leaseholds.*

Leaseholds or other private interests of persons in the sixteenth sections of land in this state, dedicated to school purposes, are subject to taxation.

FROM the chancery court of Lowndes county.

HON. A. M. BYRD, Chancellor.

The facts are stated in the opinion of the court.

*J. A. Orr,* for appellants.

The policy of the government was established in 1785, when Virginia ceded the territory northwest of the Ohio river to dedicate a part of the public lands for the benefit of schools in every township.

When the United States, in 1802, purchased the territory out of which Alabama and Mississippi were formed, the ordinance of 1787, governing the northwest territory, was applied to Mississippi. Then, by act of congress, March 3, 1802, the first general law was passed for the sale of all the lands of the territory, but the sixteenth section in every township was reserved from sale and dedicated to schools.

After acquiring the title from Georgia by payment of $6,-200,000, many treaties with the Indians were made, and thus there were as many different surveys. A special act of congress followed each treaty, providing for the sale of these lands. In each the sixteenth section of every township was reserved

for the township school.    In the act of congress ordering the survey of the lands known as the Madison survey, with Huntsville as its basis meridian, extending west to the Tombigbee river, the stereotyped reservation of the sixteenth section is made.

The sixteenth section on which two-thirds of Columbus is located, was embraced in this North Alabama Madison survey. By the terms of admission, act tenth of December, 1817, Mississippi disclaimed all right or title to the waste or unappropriated lands and the right to tax them.    The policy of leasing was first adopted by congress January 9, 1815, two years before the territory became a state.    This act authorized the county court to make leasehold contracts.

One of the first laws passed by the state, February 5, 1818, embraced the provisions of the act of congress of January 9, 1815, which authorized the county court of Monroe, in which this section was then located (Lowndes county not having been created until twelve years after), to appoint eight commissioners, to lay off the section into lots, and then three commissioners were appointed to lease these lots.    The terms of the contract of lease are laid down in this law.    In compliance with this act, Stephen Cocke and two others leased a quarter part of the section.

In 1823, the law of 1818 was amended, and the president and directors of the literary fund displaced the three agents, and were authorized to make the leases, but, in 1824, five trustees were substituted for the board of directors.    And, then, in 1830, the Franklin Academy having been incorporated as the township school in Columbus, the trustees were authorized to make further leases.

The attention of the court is called to one important change in that part of the leasehold contract which provides the remedy for nonpayment of the annual rent, commonly called leasehold tax; but it is not a tax.    It is an annual rental.    The first series of contracts covered 160 acres of the section, under

the acts of 1818 and 1820.   In those contracts, the commissioners reserved the right to enforce the payment of the annual rent, first, by sale of the lease to another person, and if the renter defaulted in payment, the commissioners were to dispossess the tenant "and lease the same in the same manner as if it had never been leased."

The contracts of lease made under the law of 1830, in case the tenant failed to pay annually the rent, dispensed with a sale, and reserved the right to dispossess the tenant and enter into part or all of the land, and again to lease clear and disincumbered of all title, etc.   The following is a copy of that provision of the leasehold contracts under which complainants hold: "And in order to insure a certainty and punctuality of payment of said sum yearly in advance, the said agent hereby makes a lien on said lot and its appurtenances, which may from time to time be created thereon, as security, and declare the same liable to be sold to satisfy the said sum of nine dollars, in whose possession soever the same may be; and on failure to pay the said sum annually in advance, they reserve to themselves and successors the right of entering on said lot and leasing the same in the same manner as if it had never been leased.   To have and to hold unto him the said (tenant), his heirs and assigns, for the full end and term of ninety-nine years next ensuing, subject, nevertheless, to the covenants and restrictions heretofore created."

There are quite a number of laws of congress reserving all sixteenth sections for school purposes, between the years 1815 and 1852, but the act of 1815 was the last of congress which provided a mode for leasing these lands until the act of 1852. The state, in 1818, assumed the authority to re-enact substantially the act of congress of 1815, which granted to the territorial county courts the power to lease.   But, at that time, the state had no more jurisdiction over this sixteenth section than it now has over the Klondike.   Happily, its legislation was in harmony with that of congress, and when it was discovered that the state had proceeded without the authority of the general

government, congress, by act of May 19, 1852, ratified the action of the state, but the precaution was taken to insert in this act of 1852, that the leases should be for the benefit of the township schools, "and for no other use or purpose whatsoever."

Judge Cooper seems to have overlooked the fact, in the able opinion in the case of *Jones* v. *Madison County*, 72 Miss., 777, that congress had passed no law on the subject of the sale or lease of this sixteenth section after 1815, whilst we were yet a territory, until the law of 1852 was passed. The title, legal and equitable, so far as the general government is concerned, in its relation to this sixteenth section, stood in 1852 as it did in 1815. The only authority to dispose of it had been given to the territorial county courts, and that was to lease, and not to sell. As just shown, the state, in 1818, during the first year of its existence, followed up the legislation of congress, and under its laws of 1820, 1822 and 1830 all of these leasehold contracts were made, and they were ratified by congress in 1852. The contracts of lease were made under special laws of the state, confirmed by the act of congress of 1852. No sale of any part of the sixteenth section was authorized. This brings us to the question to be decided by this court: Are these leasehold lots and lands subject to taxation by the city, county or state?

From 1802, the date of the purchase from Georgia, up to 1817, when the territory became a state, no tax was imposed on them by the territorial government. From 1817 to 1839 the state did not tax, or claim the right to tax. In 1839 the first act taxing this property breathes a consciousness of doing a naughty thing. It imposed a tax of one-fourth of one per centum to buy an engine to protect the property from fire, and bribed the city with a gift of power to grant license to billiard tables, hotels and dramshops, with a right to turn the license fees into the city treasury. This law was repealed in 1844, but the vampire had tasted blood, and returned to its victim in 1846, and that section of the revenue act of 1846 was transferred to the code of 1857, and has been retained in all of the codes up

to and including that of 1892. Thus, we see that for the one hundred years past no tax was claimed for near fifty years, and the tax has been imposed a little more than fifty years. I have examined all of the text-books on taxation accessible to me, and the digests of all the decisions of the courts, state and federal, and, so far as my research has gone, the question now presented is one of first impression, except in one case, on which I rely, from the state of Texas. It is impossible to answer correctly the question of liability to taxation without determining, first, who has the title to the property; and, second, by what tenure do complainants hold? What is the estate which appellants have to be taxed?

Judge Sharkey says the lease for ninety-nine years is of no higher dignity than a lease for one year, all of the legal elements of a contract being essentially the same. "A lease for ninety-nine years is of no higher dignity than a lease or term for one year; both are mere chattels, and go to the administrator to be administered." *Dillingham* v. *Jenkins*, 7 Smed. & M., 479.

The complainants are the mere tenants of the inhabitants of the township, and they, as the landlords owning these lots in fee, have the same absolute and unqualified right to eject the defaulting rent payer as any landlord in Lowndes county has to eject his defaulting renter.

The next question is, who has the title to the property? Where is the legal title? Down to *Jones* v. *Madison County*, 72 Miss., this court had uniformly held that the legal title was in the general government. *Morton* v. *Grenada*, 8 Smed. & M., *Bishop* v. *McDonald*, 27 Miss., *Hester* v. *Crisler*, 36 Miss., were followed by Judges Campbell, Cooper and Arnold as late as 1885, holding that the legal title is in the general government. Such, also was the view of the supreme court of the United States in *Trustees* v. *Indiana*, in 14 Howard. If the title is yet in the government of the United States, there is an end of the argument, for we have seen that, by the

terms of admission, the state disclaimed all title to the public lands and all right to tax them.

But, accepting the later view of this court as announced in *Jones* v. *Madison County*, that the legal title has passed to the state, does it follow that the state has the right to tax? That depends upon the nature of the estate which is vested in the state. There is a title superior to the legal title. The equitable title is paramount to the legal title. The most which can be claimed for the state is that it holds the title as a trustee for the inhabitants of the township, and these lands are to be held in perpetuity for the support of the township school. Such is the line of decisions of the supreme court of the United States, followed by the courts of Alabama, Indiana, Missouri, Illinois and Ohio, and admitted in *Jones* v. *Madison County*, *supra.*

The duty of the state is to carry out the trust as created in letter and spirit. It cannot tax a trust estate committed to its keeping. The authorities appended to this brief are full on that subject.

The constitutional prohibition against impairing contracts extends to and restricts the state from imposing illegal taxation. *Murray* v. *Charleston*, 6 Otto, 432. The contract between the state of Georgia and the United States and the state of Mississippi, under the cession by Georgia, the establishment of a territorial government, and the admission of Mississippi as a state into the union, was that every sixteenth section should be devoted exclusively to school purposes. When the state, as trustee, undertakes to impose the additional burden upon sixteenth sections, it violates the contract by which they are to be held exclusively for school purposes. Cooley's Const. Lim., p. 331. The Indiana case holds it to be a contract, and that principle is maintained by the other cases referred to hereafter.

The inhabitants of the township, by their original contract, reserved the right to re-enter all these city lots on default of the payment of the annual rental in advance. The sale for the taxes, under the city law, vests title in the purchaser at the tax

sale, and thus the estate which the inhabitants of the township have in the sixteenth sections is destroyed, and that is a destruction of the constitutional compact, as shown above, and that cannot be done under the constitution of Mississippi or under the constitution of the United States.

We concede the unlimited power of the legislature to tax when its right to taxation attaches, but here its right to tax this sixteenth section has never attached. Under the original contract, the lands were to be rented for the benefit of the township schools. Under that contract, it was to bear all the burden ever to be imposed, because the interest which the inhabitants had in the contract of lease was to realize the largest amount possible from the contract of lease for the benefit of the township schools.

The proposition to tax involves four other diversions of this township school fund, namely, the city tax for general purposes, the county tax for general purposes, the state tax, and an extra school tax. When the tax sale takes place, if no one else will become the purchaser, the state becomes the purchaser, and thus it becomes the owner of the trust fund, which, by contract, was to be held solely for the benefit of the inhabitants of the township. *Daugherty* v. *Thompson*, 9 S. W. Rep., 99, decided by the supreme court of Texas, on June 12, 1888, is, I think, conclusive of the proposition against the right of Mississippi to tax these sixteenth sections.

The following is a list of the authorities on which I rely in support of the different positions assumed in this brief: 1 U. S. Stat., p. 550, sec. 6; Code 1857, p. 646; Alden's Code, 1839, p. 20; 1 Story's L. L., p. 361; 2 U. S. Stat., p. 229; Code 1857, p. 652; 2 U. S. Stat., p. 400; 2 U. S. Stat., pp. 479 and 548; 3 U. S. Stat., pp. 163, 228, 348, 680; 10 U. S. Stat., p. 6; Poindexter's Code, p. 620; How. & Hutch. Code, p. 100; Alden & V. Code, p. 378; Laws 1830, p. 9; Poindexter's Code, p. 285; Laws 1839, p. 420; Laws 1846, p. 75; Hutch. Code, pp. 188, 521; Code 1871, § 1679; Code 1880, § 494; Code

1892, § 3780; *Fletcher's case*, 6 Cranch, p. 87; *Hester's case*, 36 Miss., p. 681; *Bishop's case*, 27 Miss., p. 371; *Morton's case*, 8 Smed. & M., p. 773; 27 Miss., p. 371; 3 U. S. Stat., 348; 13 Wall., pp. 92, 264; 33 U. S. Law. Ed., p. 687; 7 Smed. & M., p. 479; 4 Ala., p. 630; 5 Black., p. 455; 18 Mo., p. 313; 13 Mo., p. 112; 11 Ohio, p. 24; 9 Cranch, p. 292; *Ib.*, p. 43; 24 U. S. L. E., pp. 440, 321; 16 U. S. L. E., p. 256; 16 U. S. L. E., p. 259; 17 U. S. L. E., pp. 149–153; 21 U. S. L. E., p. 373; 18 U. S. L. E., p. 672; 13 U. S. L. E., p. 172; 22 U. S. L. E., p. 805; 29 Wis., p. 351; 1 Black (U. S.), p. 378; 22 U. S. L. E., p. 809; 54 Miss., p. 422; Cooley's Con. Law, p. 332; 16 Wall., p. 23; Flint on Trusts, sec. 15; Perry on Trusts, sec. 41; 4 Kent, p. 427; Hill on Trustees, p. 466; 42 Miss., p. 194; 47 Miss., p. 187; 49 Miss., 518; 7 Smed. & M., p. 409; 38 Miss., p. 546; 14 Smed. & M., p. 80; 1 Cushman, p. 103; Code 1892, §§ 3815, 2568, 2563, 2564; Flint on Trustees, secs. 106, 168, 221; 7 Am. Dec., p. 718; Flint, secs. 3, 208, 222; 1 Perry, p. 20; Ordinance City Columbus, p. 94; 24 Miss., p. 386; 27 Miss., p. 517; Cooley on Taxation, pp. 80, 82; 20 U. S. L. E., p. 536; Laws of Mississippi, 1821, 1830, 1832; 22 How. (U. S.), p. 56; 4 Otto, p. 792; 21 U. S. L. E., p. 447; 26 U. S. L. E., p. 395; 103 U. S., p. 358; 3 Wall., p. 51; 4 Wheat., p. 518; 21 U. S. L. E., p. 447; 16 How., p. 369; 18 U. S. L. E., p. 314; 21 U. S. L. E., p. 447; 19 U. S. L. E., p. 495; 11 U. S. L. E., p. 529; 19 U. S. L. E., p. 498; 26 U. S. L. E., p. 1128; *Walker's case*, 16 Wall., p. 314; *Trammell* v. *Faught*, 12 S. W. Rep., p. 317.

*William Baldwin*, for appellee.

The power of taxation is an incident of sovereignty, and is possessed by the government without being expressly conferred by the people. Everything to which the legislative power extends may be the subject of taxation, whether it be person or property, possession, franchises or privileges, occupation or

right.    Nothing but express constitutional limitation upon leg-
islative authority can exclude anything to which the authority
extends from the grasp of the taxing power, if the legislature,
in its discretion, shall select it for revenue purposes.    And not
only is the power unlimited as to subjects, but in its very nature
it acknowledges no limits, and may be exercised to any extent
which the government may find expedient.    The judiciary can
afford no redress against taxation, so long as the legislature, in
imposing it, shall keep within the limits of legislative authority
and violate no express provision of the constitution.    The nec-
essity for imposing it addresses itself to legislative discretion,
and it is or may be an urgent necessity, which will admit of no
property or other conflicting right in the citizen while it re-
mains unsatisfied.    Cooley on Taxation (2d ed.), p. 4 *et seq.*    It
is undoubtedly true that the power of the legislature to deter-
mine the rate of taxation is limited only by its wise discretion,
and may be extended so as to involve a complete confiscation
of all the taxable property within the state, if the payment of
such a tax could be enforced.    There would be no redress
in the courts for such an abuse of power.    Cooley's Const.
Lim. (6th ed.), pp. 587, 588.    It is contended, however,
by appellants that the sixteenth section is not subject to the
taxing power, for the reason that it belongs to the United
States government, and that the relation of the state to it is
that of trustee, and that hence it is not taxable by the state nor
its municipalities.    The sixteenth section is part of the territory
ceded by the state of Georgia to the United States, to be held
for the formation and establishment of schools.    The act of ces-
sion will be found in code of 1867, p. 645 *et seq.*

Under this act of cession, the title to this section passed to
the United States, and, upon the formation of the state of Mis-
sissippi, passed to the state, and the title to it is now in the state
of Mississippi.    *Cooper* v. *Roberts*, 18 Howard (U. S.), 173;
*Beecher* v. *Wetherby*, 5 Otto, 517; *Jones* v. *Madison County*, 72
Miss., 793.    It is a question, however, wholly immaterial to us,

where the title is located.    The power to tax the leasehold (and it cannot be contended that more than that has been done) exists, even if the title to the land is in the United States.    The question as to the right of the states to tax individual rights or estates in lands, the legal title to which is in the United States, has more frequently arisen in mining countries, and there we will find the question frequently arising.    The unbroken authority is to the effect that it matters not that the United States holds title to the land, that any right of ownership, any estate of the individual therein, is subject to the taxing power.    Cooley on Taxation (2d ed.), 367, 368; *Ib.*, 393; *State* v. *Moore*, 12 Cal., 70; *People* v. *Shearon*, 30 Cal., 646; *People* v. *Cohen*, 31 Cal., 210; *People* v. *Black Diamond Coal Co.*, 37 Cal., 54. If the state has the right to tax a hole in the ground, a mine upon land of the United States, when it, the mine, is owned by a private individual or corporation, the government owning the fee in the land, surely it has the right to tax a lease of the ground for ninety-nine years, renewable forever, which is, in effect, an absolute sale, if so desired by the holder.

My research has failed to find a solitary case where any denial of the power to tax these school leases appears.    Indeed, no one seems ever to have questioned the right to tax them.    In *Trammell* v. *Faught* (Texas), 12 S. W. Rep., 317, the lessee of school lands did indeed question the right to tax his lease; but his contention was not that the state could not tax the leases, but that the state had not taxed the particular lease.

Argued orally by *J. A. Orr*, for appellants.

WOODS, C. J., delivered the opinion of the court.

The appellants—about sixty or seventy in number—exhibited their bill in the chancery court of Lowndes county against the city of Columbus, praying an injunction to restrain the municipal authorities from the collection of the municipal taxes levied upon certain town lots described in the bill, and to have

declared unconstitutional and void all laws authorizing the taxation of said lots.

The bill shows that the appellants are citizens of Columbus, and lessees of the lots sought to be taxed; that all of said lots are subdivisions of section 16, township 18, range 18, in Lowndes county, upon which is situated three-fourths or more of said city, and that they hold leases to their respective lots for a term of ninety-nine years. These leases, as we learn from the briefs of counsel, the leases themselves, and the act of the legislature under which they were made, are renewable forever, at the option of the lessees.

The ground on which relief is prayed is that this sixteenth section of this particular township—as, indeed, all other sections of like number and character—are held in trust by the United States, or the state of Mississippi, for the benefit of the inhabitants of the township, for school purposes only, and are therefore nontaxable for any purpose, state, county or municipal, and that to tax them at all for governmental purposes would impair the obligation of a contract made, by which they were dedicated exclusively to educational purposes.

A demurrer to the bill was interposed by the appellee and sustained, and from the decree sustaining the demurrer and dismissing complainants' bill, this appeal is prosecuted. Whatever confusion as to where the title to these lands was lodged, may have originally existed, since the decision of this court in the case of *Jones* v. *Madison County*, 72 Miss., 777, it is now clearly and finally settled that the state of Georgia was the donor of the sixteenth sections, and that the title was never in the United States, except for a few years, when, between the dates of the articles of agreement and cession between the state of Georgia and the United States and the date of the admission of Mississippi, as a state, into the union, it was held in trust by the federal government until Mississippi should become a state. Upon the admission of Mississippi into the union, the title and control of these school lands vested in the state, in trust for

the inhabitants of the various townships. These sixteenth sections are not now, and never were, the property of the United States, and there is in the case before us no question involved as to the taxability of lands belonging to the federal government. We have said, advisedly, that the state, after its admission into the union, took, not only the title in trust to these lands, but that it took absolute control of them. In the exercise of its will, some of the sixteenth section lands were sold outright to private persons, and title vested in them in fee. The most of these lands, in the exercise of its own will, the state has leased for long terms of years to private citizens—ninety-nine years— and, in some instances, by legislative enactment, these long leases are renewable, at the pleasure of the lessees, forever. That those lands now held in fee by private persons, by virtue of such sale and purchase, are subject to taxation, as all other lands held in private ownership, has never been questioned by anyone. They are no longer the property of the state, and are no longer held in trust by the state. There is no direct declaration, nor any reasonable inferential one, in the articles of cession between Georgia and the United States, or in any constitution or laws, that these lands shall not be taxed as other private property, when they have passed into the hands of private persons, and become individual property. Not only this, but no reason, even plausible, can be advanced to support such a proposition.

The remarks just made, touching the liability to taxation of these lands sold to private persons, are applicable likewise to those lands held under lease, and especially to those held under long leases for ninety-nine years, and renewable forever at the option of the lessees. Practically, such leasehold interests are of value as great as the fee in the lands sold and title vested in the purchasers, and, practically, such leaseholders have all that the owners in fee possess.

In both classes of cases, the proceeds derived from the lands are devoted exclusively to purposes of education. It is said, however—and this is the view relied upon to sustain the con-

tention—that some supposed obligation of some supposed con-
tract has been or will be impaired by the imposition and collec-
tion of the taxes sought to be enjoined, that the rentals derived
from the leased lands will be reduced by the taxes levied and
collected, and precisely in proportion to the amounts of such
taxes. But the contention is utterly untenable, even if, in any
event, that contention were entitled to consideration in dealing
with the right of the state, or any of its civil subdivisions, to
subject the leased lands to taxation, for it is apparent that the
rentals of these lands in this controversy were fixed by contracts
of lease for ninety-nine years, before any effort had been made
to subject them to taxation, and that rental value can never be
diminished by the imposition of taxes, because, as has been
already stated, these leases are renewable forever, both by
the terms of the contracts of the lease, and the act of the legis-
lature, under which they were made. It is clear that the school
revenues derived from these leases can never be diminished by
reason of the lands covered by them being made to bear their
just proportion of the burden of taxation, if the present lease-
holders shall elect to renew their lease contracts upon their ex-
piration; and if they shall not, and new leases shall be made to
others, looking at the record before us, it requires no prophetic
vision to see that the revenues from new leases will be immensely
greater than those derived under the present leases, despite any
burdens of taxation that may be imposed.

The power in the legislature to tax is, within constitutional
bounds, unlimited. The complaint here is that as there was a
contract to devote these lands exclusively to school purposes,
any taxation would impair the obligation of that contract by
diminishing the sum that would otherwise be raised from
rentals to be devoted to educational purposes. But granting
the contract right, for the purposes of this discussion, we have
seen that the exercise of the right of taxation will not diminish
the school revenues to the extent of one cent.

So far as our research, aided by the briefs of counsel, has

gone, there cannot be found an authority that raises a doubt as
to the state's right to tax these lands, at least, to the extent of
the interest of the leaseholder.      The naked power to tax in
this case is indisputable, and the contention of the able and
learned counsel for the appellants is, that these lands, or any
interests in them, are nontaxable.      It is contrary to all author-
ity, and to every rule of reason, to say that the value of the
personal interest in the leased premises of the private citizen
may not be taxed, as distinguished from the value of the fee in
the same premises, however valuable the former may be in and
of itself.

The only authority which the zeal of counsel, or our own
diligent efforts, has brought to light, is the case of *Daugherty,
Tax Collector,* v. *Thompson,* 71 Texas, 192, in which the right
to tax the leasehold interest in school land was denied.      But'
that decision was made upon the interpretation of the peculiar
constitutional provisions and legislative enactments of that state
as to what are called county school lands.      But, while so de-
ciding the question there presented, that court distinctly declares
that " the general rule is that the owner of real estate leased is
taxed upon the entire value of the property, and this satisfies
the constitutional requirement that ' all property in this state,
whether owned by natural persons or corporations, other than
municipal, shall be taxed in proportion to its value.'      While
such property, leased for a term of three years or more, for a
purpose not carrying the exemption, would become subject to
taxation at its full value, yet the legislature has the power to
impose the tax on the value of the leasehold on the lessee; but,
in such case, in valuing the real estate for taxation against the
owner, it would seem that the value of the leasehold should be
deducted, for otherwise there would be double taxation, which,
if permissible, will not be presumed to have been intended, in
the absence of a law that will not bear any other reasonable
construction.      Property exempted from taxation, in the hands
of its owner, while used for the purposes on account of which

the exemption is given, will doubtless become subject to taxation, if leased for any period, to be used for a purpose which does not itself give the exemption, unless in cases in which the exemption is given by the constitution, or under a contract which would be impaired by taxation." Thus, it will be seen, that while that court denied the right of taxation of the county school lands, in the case before it, because of the court's construction of the constitution and laws of that state applicable in that case, yet the court distinctly recognizes the general rule, that property exempt in the hands of the owner becomes taxable when leased for any period and to be used for a purpose which does not itself give the exemption; and, further, that the interest of the lessee, in such case, is taxable.

Section 3780, code of 1892, which declares these sixteenth section lands, after having been leased, taxable as other lands during the continuance of the lease, is found in the same words in the codes of 1857, 1871 and 1880, and is, substantially, to be found in our statutes for ten or twelve years prior to the code of 1857. Having undoubtedly the power to tax the interest of the leaseholder, the legislature, in the exercise of that power, has fixed the basis upon which the assessment and levy shall be made, and that the taxing power had the right to do. With the exercise of this power, the courts may not interfere unless clearly violative of some constitutional provision. If we thought the exercise of the power in this instance oppressive and harsh (and we do not), still that would not justify the interposition of the courts of the state. Within constitutional limits, the power of the legislature in matters of taxation is supreme and beyond the control of the judiciary. This great attribute of sovereignty is lodged with the legislative department, and, for abuse in its exercise, the corrective lies not with the courts, but with the people, the source of all power primarily, and to whom the legislature must answer. The remedy lies in the ballot box.

The supreme court of the United States, in *Cooper* v. *Rob-*

*erts*, 18 Howard, 181, uses this language in discussing the power of the state over these lands: " The trusts created by these compacts relate to a subject certainly of universal interest, but of municipal concern, over which the power of the state is plenary and exclusive. In the present instance the grant is to the state directly, without limitation of its power, though there is a sacred obligation imposed on its public faith."

If the trust reposed in the state, touching the control, management and disposition of these lands, is without limitation of the state's power, if the matter is of purely municipal concern, over which the power of the state is plenary and exclusive, then it is difficult to imagine any solid reason by which the state's power to fix the basis of the assessment of the lands for levy and collection of taxes can be called in question.

In reply to the argument of counsel for appellants, touching the conflict between the law of the state and the ordinance of the city of Columbus as to sales of these lands for nonpayment of taxes, and the rights of purchasers at such sale, it is sufficient to observe that the general law of the state declares that " only the title of the lessee or his assignee shall pass by the sale," and in so far as the mere municipal ordinance is in conflict with the general law on this point, it must fail. The purchaser at city tax sale would only acquire the title of the lessee or his assignee.

*Affirmed.*