**John FRAZIER, et al.,**
**Plaintiffs-Appellants,**

v.

**LOWNDES COUNTY, MISSISSIPPI,**
**BOARD OF EDUCATION, et al.,**
**Defendants-Appellees.**

No. 82–4490
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Aug. 1, 1983.

Colom, Mitchell & Colom, Wilbur O. Colom, Gholson, Hicks & Nichols, Dewitt T. Hicks, Jr., Columbus, Miss., for plaintiffs-appellants.

Gary L. Geeslin, Robert B. Prather, Columbus, Miss., for defendants-appellees.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Holders of Sixteenth Section leases in Lowndes County brought suit against the Lowndes County School Board and county officials charging that the defendants had threatened to cancel their leases unless they agreed to a higher rent. These threats and threatened actions were alleged to be in violation of the leaseholders' rights under the Impairment of Contract Clause, the Fourteenth and Fifth Amendment Due Process Clauses, and Mississippi law. The district court dismissed the federal constitutional claims for failure to state a claim, then dismissed the pendent state claims. The leaseholders appeal. We affirm.

According to the leaseholders' complaint, a letter dated August 19, 1981, was sent to them by the Sixteenth Section Coordinator for Lowndes County. This letter informed the leaseholders that their lessor, the County Board of Education, wished to renegotiate upward the annual lease payments. "This action," the letter continued, "is predicated on an Attorney General ruling that 'receiving of inadequate compensation for 16th Section public trust property constitutes a donation of public property in violation of the constitution of the State of Mississippi ...'" The leaseholders were told that if they failed to contact the Sixteenth Section Coordinator the case would be referred "with a view toward legal action to cancel your existing leasehold interest."

A second letter dated May 5, 1982, set a final deadline of June 4, 1982, for scheduling renegotiations of leases. The letter reiterated that "[i]t is the feeling of the Board that those remaining unamended leases stand in violation of the Mississippi law and are thus voidable by court action." The leaseholders were told that the names of any who did not respond by the final deadline would be furnished to the Board of Education "for their action at that time."

The leaseholders, in their action for damages and declaratory and injunctive relief, advance three federal constitutional claims. First, they contend that the defendants' "action in requiring the plaintiffs[] to renegotiate their existing leases" violates the Impairment of Contract Clause. Second, they contend that the same action "without a predetermination that the leases were granted for inadequate compensation or were otherwise invalid" violates procedural due process. Third, they contend that the renegotiation requirement constitutes a taking for which just compensation is required. The district court granted defendants' motion to dismiss, concluding that the leaseholders had stated no constitutional claim. This appeal followed.

■ The Impairment of Contract Clause provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts ..." That clause applies to impairments through the exercise of legislative, not judicial authority. Tribe, *American Constitutional Law* 465 n. 1 (1978). Here there has been no exercise of legislative power; rather, the Lowndes County Board of Education claims a right based on a new interpretation of preexisting authority—namely the Mississippi Constitution—to terminate the leases. Our case resembles *Propst v. Board of Educational Lands and Funds of Nebraska,* 103 F.Supp. 457 (D.Neb.1951), *appeal dismissed,* 343 U.S. 901, 72 S.Ct. 636, 96 L.Ed. 1321 (1952). There the court dismissed a claim brought by lessees against the Nebraska Board of Education Lands and Funds for allegedly treating as void renewal leases it had earlier entered into. The court reasoned:

It must be kept in mind that Art. I, sec. 10 of the Constitution is a prohibition only against the impairing of contract obligation by legislation. Such impairment as may be produced by judicial decision alone is not within its ban. . . .

Here it is, of course, not the Legislature which has attempted to affect the rights which plaintiff and interveners contend have become vested in them by their renewal leases. . . . Equally, it is not any exercise of legislative power and function by an administrative board or agency which has given the renewal leases their status of illegality under state law. That status derives not from the Board's declaration of invalidity and vacating of its orders for issuance of the leases but from the stamp of nullity placed upon the 1947 Act, and so upon the things which it granted, by the pronouncement of the [Nebraska] Supreme Court . . .

*Id.* at 460.

■ The leaseholders argue that *Propst* is distinguishable because the Nebraska Board's action emanated from a Nebraska Supreme Court decision, whereas here the Lowndes County Board was relying on an Attorney General opinion. That is a distinction without a difference. Opinions of the Mississippi Attorney General do not have the force of law, *Local Union No. 845, etc. v. Lee County Board of Supervisors,* 369 So.2d 497, 498 (Miss.1979); if the leases are held invalid, it will ultimately be only because the Mississippi courts have decided that they are. Our case, in other words, is the functional equivalent of *Propst,* except that it reaches us *before* the state courts have made a definitive ruling.

■ We turn now to the Fourteenth Amendment claims—taking and denial of procedural due process. Our first step is to identify the property interest. *See Fontana v. Barham,* 707 F.2d 221, 226–227 (5th Cir. 1983). In this case, the leases are the property.

"[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The leaseholders' complaint, construed liberally, alleges two sorts of deprivations—those caused by the threats of termination themselves and those that will occur if the threatened terminations are actually carried out.

■ Although the threats themselves may reduce the value of the leaseholds, no taking results at least so long as the "threats" were made in good faith. As the Supreme Court held in *Agins v. Tiburon:*

Appellants also claim that the city's precondemnation activities constitute a taking. . . . The State Supreme Court correctly rejected the contention that the municipality's good-faith planning activities, which did not result in successful prosecution of an eminent domain claim, so burdened the appellants' enjoyment of their property as to constitute a taking. . . . Even if the appellants' ability to sell their property was limited during the pendency of the condemnation proceeding, the appellants were free to sell or develop their property when the proceedings ended. Mere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are 'incidents of ownership. They cannot be considered as a "taking" in the constitutional sense.'

447 U.S. 255, 263 n. 9, 100 S.Ct. 2138, 2143 n. 9, 65 L.Ed.2d 106 (1980). The leaseholders' complaint raises no issue of lack of good faith: the first letter from the Sixteenth Section Coordinator, incorporated by reference, states expressly that Lowndes County is relying on an opinion of the Attorney General that the leases are invalid. *Agins* stands for the proposition that, at least absent bad faith, governmental activities that adversely affect the value of property merely because they portend a diminution of property rights do not effect a taking. Accordingly, no constitutional claim is presented here.

Next, we consider whether the *termination* of the leases would produce a taking.

We reiterate that the property in question is the leaseholds. The act of termination would not by itself eliminate the leaseholds. Rather, it would simply initiate a legal dispute as to whether the leaseholds are valid or not. That dispute would presumably be resolved by the Mississippi courts. In other words, the *termination* of the leases is another one of those governmental activities contemplated by the Supreme Court in *Agins*. The acts of termination would not themselves deprive the leaseholders of property; instead, they are preparatory to other acts, judicial in nature, that might.

▪ Recently, we have relied upon *Agins* in *United States v. 2,175.86 Acres of Land, Etc.,* 696 F.2d 351 (5th Cir.1983), where we held that "the mere commencement of straight condemnation proceedings, where the government does not enter into possession during those proceedings, does not constitute a taking." *Id.* at 355 (citing *Agins,* 447 U.S. at 263 n. 9, 100 S.Ct. at 2143 n. 9). In *2,175.86 Acres,* we reversed an award of prejudgment interest dating back to the filing of the complaint in condemnation for the reason that no taking had then occurred. Similarly, the act of lease termination, where Lowndes County does not enter into possession, cannot constitute a taking.

▪ The leaseholders have alleged a violation of procedural due process as well as a taking. Of course, there can be no denial of procedural due process without a deprivation of liberty or property. As we have noted, no deprivation can occur unless the lease terminations are upheld in the Mississippi courts. As things stand now, the leaseholders' "property interest[s] [are] still intact." *Fontana v. Barham,* 707 F.2d at 227. The leaseholders' complaint does not suggest that they will not be accorded due process before their leases are cancelled by the courts. Nor, as we have already indicated, does it allege that Lowndes County has initiated the proceeding in bad faith.[1] Therefore, it follows that dismissal of the procedural due process count of the leaseholders' complaint was proper.

▪ We do not mean to say that the leaseholders will not ultimately have a constitutional claim. If the Mississippi courts sustain the lease terminations, and it turns out that the leaseholds (contrary to their conclusion) are actually valid under state law, the issue of a taking for which compensation is required remains. That is, while the scope of a property interest is determined by reference to state law, *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976), a state court's reading of federal constitutional guarantees is not dispositive. Yet the taking would be by judicial authority, not by the Lowndes County Board of Education.[2]

1. The leaseholders do charge that the Board acted "without a predetermination that the leases were granted for inadequate compensation or were otherwise invalid ..." This, in our view, does not constitute an adequate allegation of bad faith, and even if it did, it is directly refuted by the first letter from the Sixteenth Section Coordinator incorporated by reference into the leaseholders' complaint. Furthermore, we do not mean to say that even bad-faith initiation of a legal proceeding leading to the possible deprivation of a property right amounts to a constitutional violation. Such an approach would "constitutionalize" the tort of malicious prosecution; we do not, because we need not, decide today whether it is appropriate.

2. The leaseholders argue that *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), furnishes the legal standard against which County Board's actions should be measured: "In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole—here, the city tax block designated as the 'landmark site.'" *Id.* at 130–31, 98 S.Ct. at 2662–63. We disagree. In *Penn Central* the Court was considering whether New York City's Landmarks Preservation Law had effected a taking. The law, by definition, made a permanent change in the parties' legal relationships: Penn Central was thereafter prohibited from altering the architectural features of Grand Central Terminal without authorization from the Landmarks Preservation Commission. By contrast, the termination and the threat of termination here would not alter the legal relationship of the leaseholders and Lowndes County. Unless upheld by the Mississippi courts, any diminution in value they produced would be temporary and, under *Agins,* noncompensable.

For the foregoing reasons, we affirm the dismissal of the leaseholders' complaint.[3]

AFFIRMED.

---

**3.** The leaseholders do not contest dismissal of the pendent state claims, assuming that the dismissal of their federal claims was proper. *See Hondo National Bank v. Gill Savings Assn.,* 696 F.2d 1095, 1102 (5th Cir.1983).