IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 96-60652

---

J. RANDOLPH LIPSCOMB, on behalf of
himself and all others similarly situated;
MAYOR, CITY OF COLUMBUS; CITY COUNCIL OF
THE CITY OF COLUMBUS, MISSISSIPPI, as the
statutorily designated successors in office
to the Trustees of Franklin Academy,

Plaintiffs-Appellants,

versus

THE COLUMBUS MUNICIPAL SEPARATE SCHOOL
DISTRICT, Dr. Reuben E. Dilworth,
Superintendent; ET AL.,

Defendants,

THE COLUMBUS MUNICIPAL SEPARATE SCHOOL
DISTRICT, Dr. Reuben E. Dilworth,
Superintendent; ET AL.,

Defendant-Appellant,

versus

STATE OF MISSISSIPPI, Eric Clark,
Secretary of State; UNITED STATES
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT;
ERIC CLARK, Secretary of State,

Defendants-Appellees

---

Appeals from the United States District Court
For the Northern District of Mississippi

---

June 23, 1998

Before HIGGINBOTHAM, PARKER, and DENNIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:


Plaintiff J. Randolph Lipscomb initiated this class action in

federal district court, seeking a declaration as to the validity of

certain leases of Mississippi sixteenth section land.  In light of the state law issues involved in the case, the district court abstained from decision.  We conclude that the district court abused its discretion in declining to exercise its proper jurisdiction.

I.

In 1816, the United States purchased for $130,000 from the Chickasaw Nation title to land that now comprises parts of northern Alabama and Mississippi.  In 1817, following a pattern that had been in place since before the ratification of the U.S. Constitution, see Papasan v. Allain, 478 U.S. 265, 268-69 (1986), Congress authorized the survey and sale of all these lands, except for "section No. 16, in each township, which shall be reserved for the support of schools therein."  Land Sales Act of March 3, 1817, 3 Stat. 375.  Parts of the present-day town of Columbus, Mississippi, fall within these sixteenth section lands.

Responding to the Congressional direction, Mississippi included in its 1817 Constitution a provision mandating that sixteenth section lands were never to be sold and that all funds acquired by the state through the rental or lease of such lands were to be set aside "for the use of schools."  See Miss. Const. of 1817, art. 6, § 20.  In 1821, the Mississippi legislature authorized the incorporation of the town of Columbus, which was located at an important crossing of the Tombigbee River.  Intending

2

to promote the development of Columbus, the legislature also established the Franklin Academy, the first public school in Mississippi. The legislature authorized the president and trustees of the Academy to lease certain lots in the Columbus sixteenth section "for the term of ninety-nine years, reserving an annual rent therefor." See 1821 Miss. Laws Ch. XLVI, p. 73-74. The initial annual rent was to be determined by public auction. In 1830, concerned about the problem of lessees forfeiting their leases, the legislature amended the 1821 statute and ordered the insertion of the phrase "renewable forever" in all past and future Columbus sixteenth section leases. See Act of December 13, 1830, 1830 Miss. Laws 14th Sess. Ch. II, pp. 9-10.

In 1890, Mississippi adopted a new constitution, parts of which are still in force today. The 1890 Constitution placed a new condition on all sixteenth section lands in the state, directing that "[l]and belonging to, or under control of the state, shall never be donated, directly or indirectly, to private corporations or individuals." Miss. Const. of 1890, art. IV, § 95. Moreover, the 1890 Constitution limited the duration of leases of sixteenth section lands to twenty-five years. See id. art. VIII, § 211. In 1913, fears arose among the Columbus leaseholders that the constitution's twenty-five year leasing limit might invalidate their pre-existing leases. Mindful of the Contracts Clause of the United States Constitution, see U.S. Const. art. I, § 10 ("No State shall . . . pass any . . . law impairing the obligation of contracts . . . ."), the Mississippi legislature in 1914 responded

3

to the Columbus lessees' concerns by passing a law authorizing the renewal of the Columbus leases in 1920 at their original terms. See 1914 Miss. Laws Ch. 462. The leases were so renewed.

In 1989, however, the Columbus leaseholders again became concerned following a Mississippi Supreme Court decision. In Hill v. Thompson, 564 So. 2d 1 (Miss. 1989), the court held that a ninety-nine year lease of a plot of sixteenth section land for the sum of $7.50 was voidable under the non-donation principle of § 95 of the 1890 Mississippi Constitution.[1] As the court acknowledged, its decision had the effect of invalidating hundreds of sixteenth section leases across the state. See id. at 12. Notably, however, the case did not explicitly address leases with "renewable forever" clauses.

In 1988, after surveying Mississippi's case law, counsel for the Department of Housing and Urban Development in Jackson, Mississippi, determined that the 1890 Constitution rendered leaseholds of sixteenth section land in Columbus "virtually uninsurable." In 1990, responding to Hill and unhappy with the revenues generated by the Columbus leases, the president of the Columbus School Board announced that the Columbus sixteenth section leases were invalid and would have to be renegotiated. Various leaseholders responded by filing suit in Chancery Court in Lowndes County, Mississippi, seeking a confirmation of title. On January

---

[1]Previous Mississippi cases had questioned the validity of sixteenth section leases under the 1890 Constitution, but none went as far as Hill in striking down those instruments. See, e.g., Keys v. Carter, 318 So. 2d 862 (Miss. 1975).

4

16, 1992, however, the suit was voluntarily dismissed, to permit the filing of this complaint in federal court.

A few days later, on January 24, 1992, Randolph Lipscomb[2] filed a putative class action in the United States District Court for the Northern District of Mississippi against the Columbus School District, the Mississippi Secretary of State (who is statutorily authorized to administer sixteenth section lands), and HUD.  His suit sought a declaration that the Columbus leases were valid and that the lessees possessed the right to renew the leases in 2019 at their original terms.  On July 31, 1992, recognizing that at least 1,473 lessees had similar interests in Lipscomb's suit, the district court certified a class pursuant to Fed. R. Civ. P. 23.  Lipscomb moved for summary judgment, and the Secretary of State moved 1) to decertify the class and 2) for the district court to abstain.

From February 1993 until July 1996, the district court held the case under advisement.  On July 23, 1996, the court granted the Secretary of State's motion to abstain, citing Railroad Comm'n v. Pullman Co., 312 U.S. 496 (1941), and Burford v. Sun Oil Co., 319 U.S. 315 (1943).  The court reasoned that the case required an in-depth examination of Mississippi statutes and constitutional provisions, a task it felt was best left to the Mississippi courts.  The court also noted in passing that the plaintiffs' case likely

---

[2]Lipscomb holds two Columbus leases, the first originally granted in 1839 and the second in 1843.  The rentals for his leases are $.11/year and $.93/year.

5

did not state a valid federal claim under the Contracts Clause. This timely appeal followed.

## II.

We review a district court's decision to abstain for an abuse of discretion. See Allen v. Louisiana State Bd. of Dentistry, 948 F.2d 946, 949 (5th Cir. 1991), cert. denied, 503 U.S. 1006 (1992). In practice, however, our scrutiny is stricter. Because an exercise of abstention must occur within the specific limits of a particular abstention doctrine, "decisions to abstain are reviewed under a standard narrower than that applicable to decisions such as evidentiary rulings." American Bank & Trust Co. v. Dent, 982 F.2d 917, 922 n.6 (5th Cir. 1993).

## A.

One of the two bases for abstention relied upon by the district court was Burford abstention. As the Supreme Court has defined the Burford doctrine:

> Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;" or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

6

New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989) (citations omitted).  Other than citing Burford in conjunction with Pullman, the district court made little effort to apply the Burford doctrine.

The district court erred in invoking Burford abstention.  As we have stressed, Burford abstention requires the existence of a state administrative proceeding to which the federal court could defer.  See St. Paul Ins. Co. v. Trejo, 39 F.3d 585, 589 (5th Cir. 1994).  This federal lawsuit interferes with no state administrative scheme.  The Secretary of State argues that his office has supervisory and regulatory authority over sixteenth section lands.  Yet the Secretary of State has not identified any administrative process by which the validity of sixteenth section leases is adjudicated.  This lawsuit simply asks for a declaration of the lessees' rights, relief that in no way would interfere with Mississippi's system of regulating sixteenth section lands.  Cf. St. Paul Ins., 39 F.3d at 589 (rejecting Burford abstention where lawsuit did not seek to interfere with state regulatory process, but simply asked for an interpretation of a settlement agreement in light of a state statute).  Accordingly, Burford abstention is inappropriate here.  See American Bank & Trust Co., 982 F.2d at 922 n.6 (noting that district courts abuse their discretion when their abstention decisions exceed the bounds of narrow abstention doctrines).

B.

The other abstention rationale cited by the district court was the Pullman doctrine. As the Supreme Court has explained Pullman, "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided. By abstaining in such cases, federal courts will avoid both unnecessary adjudication of federal questions and 'needless friction with state policies . . . .'" Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 236 (1984) (quoting Pullman, 312 U.S. at 500). Pullman abstention depends first and foremost upon an ambiguity in state law. See Baran v. Port of Beaumont Navigation Dist., 57 F.3d 436, 442 (5th Cir. 1995). Pullman does not command district courts to abstain simply to permit state review of an unambiguous statute that has previously never been interpreted by a state court. See City of Houston v. Hill, 482 U.S. 451, 469 (1987). Moreover, the mere presence of an ambiguity in state law and a likelihood of avoiding a constitutional adjudication does not automatically compel Pullman abstention. Rather, before abstaining, "[a] district court must carefully assess the totality of circumstances presented by a particular case. This requires a broad inquiry which should include consideration of the rights at stake and the costs of delay pending state court adjudication." Duncan v. Poythress, 657 F.2d 691, 697 (5th Cir. 1981), cert. dismissed, 459 U.S. 1012 (1982).

Here, the district court abstained under Pullman after determining that a potential conflict between the 1914 Mississippi

8

statute and the Mississippi Constitution of 1890 was a substantial question of state law that might moot the federal constitutional issue. This was error.

The district court's <u>Pullman</u> rationale for abstention essentially ignored the bite of Lipscomb's argument. Lipscomb contends that prior to 1890, lessees in Columbus obtained pursuant to statutory authorization ninety-nine year leases on Columbus property that were renewable at their original terms forever. Lipscomb argues that the School District cannot employ the 1890 Constitution's prohibition against the donation of public lands to invalidate the Columbus leases, because doing so would impair the obligations of a contract in violation of the federal Contracts Clause. As Lipscomb asserts, the 1914 legislation, which confirmed that the leases could be renewed in 1920 at their original terms, is irrelevant to his argument. If the lessees enjoyed before 1890 a contractual right to renew their leases in perpetuity, they did not need a statute in 1914 to restate that right for them. <u>Cf.</u> <u>Read v. Plattsmouth</u>, 107 U.S. (17 Otto) 568, 575-76 (1883)(noting that a law recognizing an existing, binding obligation of the state is not retroactive). In a sense, therefore, the 1914 legislation was wholly unnecessary.[3]

---

[3]Apparently, lessees in Columbus petitioned the Mississippi legislature in 1913 to pass the statute in order to remove a cloud over their title created by the 1890 Constitution. The Columbus City Attorney, E.T. Sykes, wrote a brief to the legislature requesting the enactment of the statute. The brief strongly stated that the 1890 Constitution could not impair the vested rights of the lessees to renew their leases forever, but it requested the legislation anyway "as a matter of security" to silence various "Doubting Thomases" who had questioned the leases.

The district court, however, focused solely on the legality of the 1914 statute in deciding to abstain under Pullman. The court reasoned that since the leases were apparently renewed under the authority of the 1914 statute, it would take a Mississippi court to determine whether the 1914 statute conflicted with the 1890 Constitution. Pullman abstention is appropriate only when there exists an ambiguous issue of state law, the resolution of which by a state court might help a federal court to avoid a constitutional decision. See Hawaii Hous. Auth., 467 U.S. at 236. Here, settling the Mississippi constitutionality of the 1914 statute would not help to resolve the federal constitutional claims of the class, for those claims are premised on a conflict between the 1890 Mississippi Constitution and the pre-existing leases.[4]

Perhaps acknowledging the irrelevance of the 1914 statute, the Secretary of State advances an alternate basis for finding that this litigation implicates unsettled questions of state law. The

---

[4]The district court also relied on our opinion in Frazier v. Lowndes County, Miss. Bd. of Educ., 710 F.2d 1097, 1099 (5th Cir. 1983) to support its argument that the legal threats from the School District here did not implicate the Contracts Clause. Although the applicability of Frazier may speak to the merits of this case, to the extent that the district court relied on Frazier in its decision to abstain, it erred. In Frazier, we rejected the claim that a school district's threatened cancellation of sixteenth section leases violated the Contracts Clause. We only found the Contracts Clause inapplicable, however, because the legal authority upon which the school district relied in challenging the leases predated those leases. See id. at 1099 ("[T]he Lowndes County Board of Education claims a right based on a new interpretation of preexisting authority . . . to terminate the leases."). Here, on the other hand, the school district allegedly challenges the Columbus leases under the authority of the Mississippi Constitution of 1890, which postdated them -- a potential Contracts Clause violation.

Secretary of State argues that the 1830 statute granting the trustees of Franklin Academy the right to issue renewable-forever leases was later repealed by statutes in 1830 and 1833. Lipscomb's own leases, along with many others that purportedly contain the renewable-forever terms, were crafted after 1830. Thus, argues the Secretary of State, there is an unsettled question of state law regarding the legality of the renewable-forever terms in the Columbus leases, which requires adjudication in the first instance in a Mississippi court.

The statute authorizing the Columbus trustees to issue renewable-forever leases was enacted on December 13, 1830, and reads, in pertinent part:

> [T]he Trustees of said Franklin Academy be, and they are hereby authorized to lay off and lease lots, not to consist of more than ten acres each, for the same time, and in like manner, and on like condition with those in the present plan of the town of Columbus, throughout the section; and that said Trustees be, and are hereby authorized to make out all leases for the lots of said section, for ninety nine years, dating from the first leasing of lots in said town of Columbus, renewable forever. *Providing, always,* that the payment of leases on said lots be made annually in advance, as before; and that all leases heretofore made of lots, by the said Trustees, be renewable at the expiration of the time for which these were leases, in like manner as above, provided for, in cases of lots to be leased hereafter.

Act of December 13, 1830, 1830 Miss. Laws 14th Sess. Ch. II, pp. 9-10. The Secretary of State notes, however, that three days later the Mississippi legislature passed a new law. This statute, dated December 16, 1830, directed the trustees of schools in a variety of counties, including Lowndes (the county containing Columbus), to lease sixteenth section lands for fixed ninety-nine year terms, whenever a "majority of the heads of families in any township"

11

requested them to do so.  Act of December 16, 1830, 1830 Miss. Laws 14th Sess. Ch. II, pp. 330-31.  The December 16 statute also contained a repealing clause providing that "all acts and parts of acts coming within the meaning and purview of this act be, and the same are hereby repealed."  Id.[5]  Furthermore, in 1833, the Mississippi legislature passed another sixteenth section statute, with substantially the same provisions as the December 16, 1830 statute.  See Act of February 27, 1833, 1833 Miss. Laws pp. 452-54.[6]  Like the second 1830 act, the 1833 statute contained a clause

---

[5]The December 16 statute reads, in pertinent part:

Sec. 1. *Be it enacted by the Senate and House of Representatives of the state of Mississippi, in General Assembly convened*, That hereafter whenever a majority of the heads of families in any township in the counties of Madison, Jefferson, Claiborne, Monroe, and Lowndes, shall deem it expedient, and shall in writing, direct the trustees for schools in said township to lease for the term of ninety-nine years, the sixteenth section, or other lands reserved in lieu thereof, it shall be their duty to do so on their giving thirty days notice in the nearest newspaper and at three of the most public places in said county of the time and place of leasing the same.
. . . .
Sec. 3. *And be it further enacted*, That said land shall be offered for lease in lots of not more than a quarter of a section, not less than an eighth of a section . . . .
. . . .
Sec. 6. *And be it further enacted*, That all acts and parts of acts coming with the meaning and purview of this act be, and the same are hereby repealed.

Act of December 16, 1830, 1830 Miss. Laws 14th Sess. Ch. II, pp. 330-31.

[6]The 1833 statute reads, in pertinent part:

Section 1. *Be it enacted by the Legislature of the state of Mississippi*, That whenever a majority of the resident heads of families, (minors excepted,) in each township, or fractional township, containing section No. 16. or such section as may be reserved for the use of schools in lieu

12

dictating that "all acts and parts of acts contravening the provisions of this act be and the same are hereby repealed." Id.

The Secretary of State contends that there is a substantial question whether the second 1830 statute and the 1833 statute both repealed the first 1830 statute, which permitted renewable-forever leases. Accordingly, argues the Secretary of State, the federal constitutional question regarding the conflict between the 1890 Constitution and the pre-existing Columbus leases is preceded by a state law question concerning the authority of the school trustees to enter into renewable-forever leases before 1890. If the trustees lacked such authority, contends the Secretary of State, the federal constitutional question would be mooted, thereby justifying Pullman abstention.

We disagree, for we find that the statutory scheme involved here is not so ambiguous as to require Pullman abstention. See City of Houston, 482 U.S. at 469 (requiring ambiguity in statutory scheme before abstention is to be exercised). The Secretary of

---

thereof, within this state, shall request the same, it shall be the duty of the trustees now in office, or who may hereafter be in office, to lease the said section of their respective townships to the highest bidder, for the term of ninety-nine years, . . . *Provided*, that said trustees may divide and lease such section in lots of not less than eighty acres, if they should deem the same most advantageous . . . .
. . . .
Sec. 8. *And be it further enacted*, That this act shall not be construed as to affect any prior disposition, which may have been made of any of the sections of any township within this state; and that all acts and parts of acts contravening the provisions of this act be and the same are hereby repealed.

Act of February 27, 1833, 1833 Miss. Laws pp. 452-54.

13

State faces an uphill struggle in establishing the requisite state-law ambiguity, for the Mississippi Supreme Court in 1898 confirmed that the Columbus leases were properly made renewable forever. In Street v. City of Columbus, 23 So. 773 (Miss. 1898), Columbus leaseholders challenged the authority of Columbus to tax the capital value of their leases, a value which had arisen because the locked-in rents did not reflect the true value of the leaseholds. In holding that Columbus could so tax the leases, the court repeatedly acknowledged that the Columbus leases were renewable forever. See id. at 773 ("These leases, as we learn from the briefs of counsel, the leases themselves, and the act of the legislature under which they were made, are renewable forever, at the option of the lessees."); id. at 774 (repeatedly noting that a statute made the leases renewable forever). Although the precise question of the renewability of the Columbus leases was not before the Street Court, the opinion's affirmation of the leases' perpetual terms was not dicta, for acknowledging that the leases were so renewable was necessary to establish the extent of their capital value.

The Street opinion made no mention of the two statutes cited by the Secretary of State, in all likelihood because no party thought them relevant to the Columbus leases. Indeed, no Mississippi authority has ever suggested that the two statutes affect the renewable-forever nature of the Columbus leases. Cf. City of Houston, 482 U.S. at 469 (noting that simple fact that statute has not previously been construed does not supply requisite

14

ambiguity to justify abstention). On the contrary, an 1848 official compilation of the Mississippi Code lists all statutes governing the Columbus sixteenth section land, but does not refer to the two laws cited by the Secretary of State. See A. Hutchinson, Code of Mississippi 246 (1848).

Although the Street opinion alone removes most doubt about the validity of the perpetual terms in the Columbus leases, we are confident that even if the Street Court had confronted the Secretary of State's two statutes, it would have found them inapplicable to Columbus. By their terms, the December 16, 1830 and February 27, 1833 statutes did not dissipate any pre-existing leases nor were they self-executing. Rather, the two statutes provided that the trustees of school districts in Lowndes county were to lease sixteenth section lands for ninety-nine year terms *only* when the majority of households in a community requested them to do so. There is no evidence to suggest that the households in Columbus ever voluntarily invoked those statutes. Indeed, it would have been absurd for them to have done so. Both the December 16, 1830 and February 27, 1833 statutes mandated a minimum lot size of eighty acres. The eighty-acre minimum indicates that the legislature was contemplating rural lots. By 1830, however, the Columbus sixteenth section was urban. In accordance with its urban nature, the December 13, 1830 statute that specifically empowered the Columbus school trustees to authorize renewable-forever leases permitted lots of no more than ten acres each. The Mississippi legislature in enacting the general December 16, 1830 statute could

15

not possibly have intended to repeal its more specific December 13, 1830 law, passed just three days earlier. If the December 16, 1830 statute was a mandatory, overriding provision, it would have allowed only eight lots on the 640-acre Columbus sixteenth section, thereby depopulating the city of Columbus. The Secretary of State perhaps should be commended for his creativity, if not his nineteenth-century legal research, but the two statutes he has located have failed to create a substantial ambiguity in state law.

Finally, the Secretary of State contends that the December 13, 1830 statute authorizing renewable forever Columbus leases 1) was invalid under the 1817 Mississippi Constitution, which prohibited the "sale" of sixteenth section land, and 2) violated the trust under which Mississippi held the land. While a renewable-forever lease may in practical effect resemble a "sale," the United States Supreme Court has acknowledged that in legal effect such instruments are leases. See Bosley v. Wyatt, 55 U.S. (14 How.) 390, 396 (1852); see also Street, 23 So. 773 (construing the Columbus leases as "leases"). The contention that the leasing of this sixteenth section land violated the trust for the benefit of schoolchildren under which Mississippi held the land is also easily dispatched. As we have previously stated with respect to indistinguishable Choctaw sixteenth section land in Mississippi, the trust under which Mississippi operated at best created an honorary, not a mandatory, obligation on the part of the state to administer the lands for the benefit of schoolchildren. See Madison County Bd. of Educ. v. Illinois Central R.R. Co., 939 F.2d

16

292, 303-05 (5th Cir. 1991); see also Alabama v. Schmidt, 232 U.S. 168 (1914) (permitting title to similar sixteenth section lands in Alabama to pass by adverse possession, because trust obligations were merely honorary in nature). Moreover, it is doubtful that the leasing of the Columbus sixteenth section land even violated the honorary trust. The legislature apparently authorized the renewable-forever terms in the leases to prevent lessees from forfeiting, an action that itself would deprive the schools of funds. The renewable-forever terms encouraged the development of the city of Columbus, an event at least indirectly beneficial to the schools. See Madison County, 939 F.2d at 306-07 (reasoning that the development of railroads generally benefitted education in Mississippi, even if the railroad companies received sixteenth section right-of-ways for free).

Even assuming, for the sake of argument, that some uncertainty exists in these unconstrued nineteenth century statutes, the presence of a minute degree of ambiguity does not in and of itself demand Pullman abstention. Cf. Baggett v. Bullitt, 377 U.S. 360, 375 (1964) ("The abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers."). Instead, in determining whether abstention is appropriate in any particular case, we must consider the totality of circumstances. See Duncan, 657 F.2d at 697. Lipscomb cites several factors that cut against abstention. First, assuming that the class was properly certified, sending this case back to state

17

court would be inefficient, as Mississippi law does not permit class action litigation. See Miss. R. Civ. P. 23, Comment ("Class action practice is not being introduced into Mississippi trial courts at this time."). Accordingly, were we to uphold federal abstention, Lipscomb would either have to litigate this case individually or join the other 1,400 Columbus lessees to his state lawsuit. Cf. Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc., 996 F.2d 774, 777 (5th Cir. 1993) (approving of use of federal declaratory judgment actions to avoid multiplicity of state lawsuits). Second, the exercise of federal jurisdiction in this case would not substantially intrude upon Mississippi's state interests. Even though there are numerous Columbus lessees, the Columbus leases, with their renewable-forever terms, are apparently unique among the sixteenth section leases in Mississippi. As such, even if we were to resolve a minor ambiguity in Mississippi law, our decision would have no far reaching preclusive effects in the state. Cf. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814 (1976) ("Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar.").

The district court's stated reasons for abstention were erroneous. Moreover, despite the Secretary of State's suggestions, the legality of the Columbus leases under pre-1890 law is not so ambiguous as to require deference to a state court pursuant to

18

<u>Pullman</u>. Even assuming that some minor degree of state-law ambiguity exists with respect to the leases, other factors in this case argue in favor of the exercise of federal jurisdiction.

### III.

The Secretary of State has advanced a variety of other arguments against our granting of relief to the class. He notes that the price terms of Lipscomb's own leases have changed throughout the years, perhaps suggesting that Lipscomb's leases were not renewals but were in fact new leases. The Secretary of State also argues that tax sales appear in the chain of title of a number of the Columbus leases, thereby terminating those leasehold interests. Neither of these contentions, however, identifies an ambiguity in state law sufficient to justify abstention. Rather, the Secretary of State suggests complications that the district court will have to surmount in ruling on the merits of this case and/or fashioning class relief.[7]

We conclude that the district court abused its discretion in declining to exercise its proper jurisdiction. This litigation does not implicate any issue of state law that is so ambiguous as to justify abstention. Similarly, certification to the Mississippi

---

[7]Lipscomb points us to certain exceptional cases in which our court has addressed the merits of a claim after finding that the district court below erred in abstaining. <u>See, e.q.</u>, <u>Snap-on Tools Corp. v. Mason</u>, 18 F.3d 1261, 1267 n.7 (5th Cir. 1994). Assuming that we have the power to grant summary judgment in favor of the class, as Lipscomb requests, we decline to do so, given the complexities that remain in this case.

Supreme Court would be inappropriate here: "[A]bsent genuinely unsettled matters of state law, we are reluctant to certify." Jefferson v. Lead Indus. Ass'n, Inc., 106 F.3d 1245, 1247 (5th Cir. 1997).

REVERSED AND REMANDED.