STATE OF ALABAMA *v.* SCHMIDT.

ERROR TO THE SUPREME COURT OF THE STATE OF ALABAMA.

No. 595. Argued January 12, 1914.—Decided January 26, 1914.

The act of March 2, 1819, c. 47, § 6, 3 Stat. 489, under which Alabama became a State, vested the legal title of section 16 of every township in the State absolutely although the statute declared that it was for the use of schools.

While the trust created by a compact between the States and the United States that section 16 be used for school purposes is a sacred obligation imposed on the good faith of the State, the obligation is honorary and the power of the State where legal title has been vested in it is plenary and exclusive. *Cooper* v. *Roberts,* 18 How. 173.

Statutes of limitation providing for title by adverse possession against the State after a specified period are a valid exercise of the power of the State and apply to lands conveyed to the State absolutely by the United States although for the use of schools. *Nor. Pac. Railway Co.* v. *Townsend,* 190 U. S. 267, distinguished.

A statute passed by a State disposing of lands conveyed in the enabling act by the United States to be used by the State for school lands,

*held* not to impair the obligation of the contract created by the acceptance of the enabling act.  The State has the right to subject such lands in its hands to the ordinary incidents of title.  *Cooper* v. *Roberts*, 18 How. 173.

THE facts are stated in the opinion.

*Mr. Robert C. Brickell,* Attorney General of the State of Alabama, with whom *Mr. R. B. Evins* was on the brief, for plaintiff in error:

Sections 16 in this State were granted by Congress to the inhabitants of the several townships for the specific use of schools.   Acts of March 2, 1819, 3 Stats. 489, and March 2, 1827, 4 Stats. 237.

This grant which was in the form of a proposal to the people of the Alabama Territory, the acceptance of which was a prerequisite for the admission of the State into the Union, was accepted, as made, by the inhabitants of the State, in convention assembled, on August 2, 1819. Ordinance, Const. Conv. of 1819; 1 Code, Alabama, 1907, pp. 82–83.

Upon the acceptance of these proposals, the State was admitted into the Union.  3 Stats. 608.

By the grant of these lands for the particular use, the United States retained title for all other purposes or uses. *Nor. Pac. Ry. Co.* v. *Townsend*, 190 U. S. 267.

The State of Alabama, in accepting the proposals upon which its admission into the Union was made contingent, disclaimed all right and title to waste or unappropriated lands lying within said Territory.   Clause in fourth proposal in act of Congress of March 2, 1819, 3 Stats. 489; Ordinance of 1819, *supra;* 1 Code, p. 82.

All other uses or purposes to which said Sections 16 might be put, except the use for schools, being unappropriated by the United States, came within the above disclaimer.

A state statute of limitations, whereby lands granted by

the United States to a specific use, are diverted from that use into private ownership, are in conflict with the act of Congress making the grant, and void.

The State has no power to divert sixteenth section lands from the specific use, for schools, to which they were dedicated by the act of Congress. *Nor. Pac. Ry. Co.* v. *Townsend*, 190 U. S. 267; *Vincennes University* v. *Indiana*, 14 How. 269; *Springfield* v. *Quick*, 6 Indiana, 83; *S. C.*, 22 How. 56; *Davis* v. *Indiana*, 94 U. S. 792; *Morton* v. *Granada Academies*, 16 Mississippi, 773.

The acceptance of the proposals of the act of March 2, 1819, created a contract between the United States and the State of Alabama, and the attempted diversion of these lands from the use to which granted, by a state statute of limitations, violates the obligation of this contract, and is void. *Fletcher* v. *Peck*, 6 Cranch, 87; *Fenn* v. *Kinsey*, 45 Michigan, 446, 8 N. W. Rep. 64; *Covington* v. *Kentucky*, 154 U. S. 204; *United States* v. *Great Falls*, 21 Maryland, 119; *Lowery* v. *Francis*, 2 Yerg. (Tenn.) 534.

The acts of Congress making the grant are construed most strongly against the grantee, and in favor of the United States. *United States* v. *Michigan*, 190 U. S. 379.

The acts of March 2, 1819, and March 2, 1827, are *in pari materia*, and must be construed as if passed at the same time. *Plummer* v. *Murray*, 51 Barbour (N. Y.), 201; *People* v. *Aichison*, 7 How. Pr. 241.

The grant of Sections 16 for the use of schools, is a part of the land system of the United States. 2 Kent. Com. (13th ed.) 196, note e, and see act of Congress of 1875, providing that lot No. 16 of every township shall be so reserved. And see also § 3 of the Ordinance establishing the North West Territory.

*Mr. J. K. Dixon*, with whom *Mr. William B. White* and *Mr. John P. Tillman* were on the brief, for defendant in error;

The grant of Sections 16 to the inhabitants of the townships for the use of schools in the State of Alabama, and the acceptance of the proposal contained in § 6 of the act for the admission of Alabama by the convention operated as a present grant and immediately divested the title of the United States to Sections 16. *Cooper* v. *Roberts,* 18 How. 173; *Hedrick* v. *Hughes,* 15 Wall. 123; *Kissel* v. *St. Louis Public Schools,* 18 How. 19; *Campbell* v. *Township Number One,* 13 How. 244; *McNee* v. *Donahue,* 142 U. S. 587; *Johanson* v. *Washington,* 190 U. S. 179; *Beecher* v. *Wetherby,* 95 U. S. 517; *United States* v. *Tully,* 140 Fed. Rep. 899.

The Alabama grant of Sections 16 being a grant of the entire title thereto, without reservation, vests in the grantee or grantees an indefeasible fee simple title and is not governed by the rules of law laid down with reference to grants of rights-of-way to railroads. Cases *supra,* and see also *Deseret Salt Co.* v. *Tarpey,* 142 U. S. 241; *Rutherford* v. *Greene,* 2 Wheat. 196; *Toltec Ranch Co.* v. *Cook,* 191 U. S. 532; *Iowa Land Co.* v. *Blumer,* 206 U. S. 482; *Missouri Valley Land Co.* v. *Wiese,* 208 U. S. 234; *Nor. Pac. R. R. Co.* v. *Ely,* 197 U. S. 1.

No one can take advantage of the non-performance of a condition subsequent annexed to an estate in fee except the grantor or its successors. The same rule applies to a grant upon condition proceeding from the government. *Schulenberg* v. *Harriman,* 21 Wall. 44; *Spokane &c. R. Co.* v. *Washington &c. R. Co.,* 219 U. S. 166; *United States* v. *Nor. Pac. R. Co.,* 152 U. S. 281.

Nothing in the Alabama grant of Sections 16 school lands imports a limitation of the fee. *Stuart* v. *Easton,* 170 U. S. 383.

Adverse possession as against a trustee operates as well against the beneficiaries of the trust. *Meeks* v. *Olpherts,* 100 U. S. 564.

Adverse possession against any party in which title is

so vested that such party may grant an indefeasible estate in fee simple ripens into a fee simple title by the operation of the Statute of Limitations. *Nor. Pac. R. Co.* v. *Ely,* 197 U. S. 1; *Coxe* v. *University of Alabama,* 161 Alabama, 639.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit brought by the State of Alabama to recover possession of a specified part of Section 16, Township 17, Range 5, Talladega County. It was agreed that the land was a part of the sixteenth section school lands given to the State by the act of March 2, 1819, c. 47, § 6, 3 Stat. 489, 491, and still belonged to the State if the defendant had not got a title by adverse possession, which it was agreed the defendant had if the statutes of Alabama limiting suits like the present to twenty years were valid. The trial court ruled that the statutes were valid and ordered judgment for the defendant, and this judgment was affirmed by the Supreme Court of the State.

We are of opinion that the judgment must be affirmed. The above mentioned act of Congress, under which Alabama became a State, provided that section sixteen in every township 'shall be granted to the inhabitants of such township for the use of schools.' Of course the State must admit, as it expressly agreed, that these words vested the legal title in it, since it relies upon them for recovery in the present case. Any other interpretation hardly would be reasonable. In some cases the grant has been to the State in terms, but in whichever way expressed probably it means the same thing, so far as the legal title is concerned. Certainly it has the same effect with regard to the scope of the State's legal control.

The argument for the plaintiff in error relies mainly upon *Northern Pacific Ry. Co.* v. *Townsend,* 190 U. S. 267, 271, which held that a right of way over public land

granted by the United States for railway purposes could not be extinguished by adverse possession under the statute of limitations of the State in which the land lay. The ground of that decision was that the grant to the railroad was not a conveyance of the land in fee simple absolute but a limited grant 'upon an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted.' This decision has been met for some similar cases elsewhere by the act of June 24, 1912, c. 181, 37 Stat. 138. *Union Pacific R. R. Co.* v. *Laramie Stock Yards Co.*, 231 U. S. 190. *Union Pacific R. R. Co.* v. *Snow*, 231 U. S. 204. But it does not apply to a gift to a State for a public purpose of which that State is the sole guardian and minister. As long ago as 1856 it was decided "the trusts created by these compacts relate to a subject certainly of universal interest, but of municipal concern, over which the power of the State is plenary and exclusive," and it was held that the State of Michigan could sell its school lands without the consent of Congress. *Cooper* v. *Roberts*, 18 How. 173, 181. This decision adverted to the fact that it had been usual for Congress to authorize the sale of lands if the State should desire it, but suggested that it was unnecessary, (which, indeed, followed from what was decided), and thus met the further argument here pressed that a qualified permission to sell was given to Alabama by a much later act of March 2, 1827, c. 59, 4 Stat. 237. It also disposes of other forms of the same contention, that the state law impairs the obligation of its contract, or involves a breach of trust, supposing that such positions are open to the State to take. *American Emigrant Co.* v. *Adams County*, 100 U. S. 61. *Spokane & British Columbia Ry. Co.* v. *Washington & Great Northern Ry. Co.*, 219 U. S. 166. The gift to the State is absolute, although, no doubt, as said in *Cooper* v. *Roberts*, 18 How. 173, 182, 'there is a sacred obligation imposed on its public faith.' But that

obligation is honorary like the one discussed in *Conley* v. *Ballinger*, 216 U. S. 84, and even in honor would not be broken by a sale and substitution of a fund, as in that case; a course, we believe, that has not been uncommon among the States. See further *Stuart* v. *Easton*, 170 U. S. 383, 394.

Some reliance was placed upon *Trustees for Vincennes University* v. *Indiana*, 14 Howard, 268, but the decision of the majority in that case rested upon the grant having been made to a private corporation of which the rights could not be impaired by the State.

The result of *Cooper* v. *Roberts* and of what we have said is that the State had authority to subject this land in its hands to the ordinary incidents of other titles in the State and that the judgment must be affirmed. *Northern Pacific Ry. Co.* v. *Ely*, 197 U. S. 1, 8.

*Judgment affirmed.*