**MADISON COUNTY BOARD OF EDUCATION, Plaintiff,**

v.

**ILLINOIS CENTRAL RAILROAD COMPANY and Dick Molpus, Secretary of State of the State of Mississippi, Defendants.**

**Civ. A. No. J88–0460(B).**

United States District Court, S.D. Mississippi, Jackson Division.

Dec. 21, 1989.

Jerry R. Wallace and Danny Crotwell, Canton, Miss., for plaintiff.

Leslie Scott, Office of Atty. Gen., Jackson, Miss., for defendants.

MEMORANDUM OPINION
AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on the Motion of defendant Illinois Central Railroad Company ("ICRR") for Summary

Judgment pursuant to rule 56 of the Federal Rules of Civil Procedure. The Plaintiff Madison County Board of Education ("Madison County") has responded to the Motion, and the Court, having considered the motion and response together with memoranda of authorities and attachments thereto, is of the opinion that there exist no genuine issues of material fact, and that the Defendant ICRR is entitled to judgment as a matter of law.

## UNDISPUTED FACTS

This suit involves a rather straightforward title dispute between ICRR and Madison County over a 200–foot right-of-way for railroad tracks through sixteenth section lands in Madison County, Mississippi. ICRR maintains that it is the owner of the right-of-way in fee simple by virtue of a charter of February 17, 1882, wherein the Legislature of the State of Mississippi granted the predecessor of ICRR, the Yazoo and Mississippi Valley Railroad Company ("Y & MVRR"), a right of way to be located wherever the railroad chose to lay its tracks, and by virtue of the subsequent merger of the two railroads. The provisions of the Y & MVRR's charter provided:

WHEREAS, the construction of railroads in, through and along the Mississippi River Basin, and the Yazoo and Sunflower Basins, penetrating these and other alluvial lands in this state, west of the Chicago, St. Louis and New Orleans Railroad, and connecting them by railroads and branches with other railroads west, east, north and south, is deemed and hereby declared to be a work of great public importance and in strict accordance with the true policy and interest of this state, should be encouraged by legislative sanction and liberality ...

. . . .

NOW, THEREFORE, in order to induce the investment of capital in the construction, maintenance and operation of such a railroad and branches, and thus develop the resources and wealth of this state:

. . . .

BE IT ... ENACTED that the right-of-way is hereby granted said company to pass in and through the State of Mississippi with said railroads, branches, spurs and laterals aforesaid, and to enter upon and use all lands, rocks, timber, earth, sand, gravel, water and other materials, which may belong to the State of Mississippi, and be convenient and necessary for the use of said railroad; and wherever said railroads or the branches, spurs or laterals aforesaid are located over any lands *belonging to this State*, title in fee simple to 100 feet on each side of the center of said railroad track or tracks shall vest in said company, its successors and assigns....

1882 Miss.Laws Chap. 541 (emphasis added).

The Charter further gave Y & MVRR three years within which to earn its right-of-way by completing construction of at least twenty miles of track and provided that the legal description to the right-of-way would be established by survey after the track had been laid. 1882 Miss.Laws Chap. 541, § 13.

This controversy centers around the validity of the grant to the railroad in 1882. Madison County brings this suit pursuant to sections 29–3–1 and 29–3–3 of the Mississippi Code as trustee of the sixteenth section school land trust within the Madison County School District. Section 29–3–1 provides:

(1) Sixteenth section school lands, or lands granted in lieu thereof, constitute property held in trust for the benefit of the public schools and must be treated as such. The board of education under the general supervision of the state land commissioner, shall have control and jurisdiction of said school trust lands and of all funds arising from any disposition thereof heretofore or hereafter made. It shall be the duty of the board of education to manage the school trust lands and all funds arising therefrom as trust property. Accordingly, the board shall assure that adequate compensation is received for all uses of the trust lands, except for uses by the public schools....

Miss.Code Ann. § 29–3–1 (Supp.1989). Section 29–3–3 provides:

> The board of education may employ one (1) or more competent persons to ascertain the true condition of the title and to institute and prosecute, in the chancery court of the county where the land lies, all necessary suits to establish and confirm the title to each parcel of such land and to fix the date of the expiration of any lease of the same. If any person claim any of said land in fee simple or upon any other terms than that of a lease to expire at a fixed date with absolute reversion to the state in trust, or if the title to such lands rest in parol by destruction of records or otherwise, suit shall be instituted at once or as soon as practicable to test the legality of such claims or to re-establish the lost record.

Miss.Code Ann. § 29–3–3 (Supp.1989).

Madison County asserts that the grant to the railroad violated the obligation of the state pursuant to the sixteenth section school land trust created under the compact of April 18, 1802, between the State of Georgia and the United States by which Georgia ceded territory for the creation of new states. By means of the Act of 1802, Georgia ceded the territory now comprising the states of Mississippi and Alabama to the United States, on condition that when these territories developed sufficient population they would be admitted to the Union as states under the same terms and conditions as those states admitted to the Union pursuant to the Northwest Ordinance. Both the Northwest Ordinance and the Act of 1802 called for the territory to be divided into townships having thirty-six numbered sections and required that the sixteenth section of each township be used for the support of the public schools within each township.

Madison County argues that the legislature in 1882 either lacked the power to convey the right-of-way or never intended to convey any land constituting school trust lands in the 1882 charter or that the land in question did not "belong" to the state as that term is used in the charter. Madison County seeks to have the grant of

title invalidated and to collect damages from ICRR for the back rental value of the right-of-way.

ICRR argues, on the other hand, that if it does not own the land in fee simple, it at least owns an easement of one hundred feet (fifty feet on each side of the center of the track) pursuant to Miss. Const. of 1890, Art. 4, § 95, and Miss.Code of 1892 §§ 3577 and 3590. These provisions state in pertinent part:

> Section 95. Lands belonging to, or under the control of the State, shall never be donated directly or indirectly, to ... railroad companies. This, however, shall not prevent the legislature from granting a right-of-way, not exceeding one hundred feet in width, as an easement, to railroads across state land, and the legislature shall never dispose of the land covered by said right-of-way so long as such easement exists.

> Section 3577. Powers, rights and privileges. ——Every railroad corporation organized under the provisions of this chapter, shall have and exercise the following powers, rights, and privileges, vis:
>
> . . . .
>
> Section 3590. *Thirteenth.* Right-of-way over state lands. ——to enter upon, acquire and enjoy a right of way over and across any lands belonging to the State, the same not to exceed in width one hundred feet, and not to be appropriated or used save when the actual construction of the road has reached such state lands.

The railroad points out that neither section 95 of the Mississippi Constitution nor the code sections cited require the railroads to pay compensation for the easements, and argue that this defeats the claim of Madison County for rent.

Madison County responds that sections 3577 and 3590 cited by ICRR are inapplicable because the Y & MVRR was not "organized under the provisions of this chapter," referring to Chapter 112, Mississippi Code of 1892. ICRR answers that the 1892 Y & MVRR consolidation with ICRR created a new corporation under the 1892 Code,

which corporation would be entitled to the benefits of sections 3597 and 3590 of that Code.

The railroad also invokes the benefit of the presumption of valid title created by Miss.Code Ann. § 29–3–7, which states:

Adverse possession for a period of twenty-five years under a claim of right or title, shall be prima facie evidence in such a case that the law authorizing the disposition of the lands has been complied with and the lease or sale duly made. If the claim be under a lease, the time at which the lease expires shall be fixed by the court.

ICRR argues that this statute applies specifically against the state as to sixteenth section lands because the statute in fact appears under the chapter of the code entitled "Sixteenth Section and Lieu Lands." Madison County responds that since the state legislature was without authority to convey title to the disputed lands, the statute cannot be invoked. This assertion is based upon case law holding that there must have been lawful authority for the conveyance in the first place in order to invoke section 29–3–7. *See Foster v. Jefferson County,* 202 Miss. 629, 32 So.2d 126 (1947). Madison County points out that there was no valid sale of the lands in that they were donated.

Alternatively, ICRR relies upon the doctrines of equitable estoppel and presumption of grant. ICRR finally argues that should this Court find that title belongs in Madison County, ICRR should not, on equitable grounds, be liable for rent or for any damages for the wrongful possession of the property in question. Because this Court is of the opinion that as a matter of law ICRR possesses fee simple title to the land pursuant to the charter of its predecessor Y&MVRR, the alternative theories of the ICRR and the objections of the Plaintiff will not be addressed in this opinion.

## THE LAW

The Court will now turn its attention to the contentions proffered by Madison County to demonstrate that the conveyance by the State of Mississippi in the charter of the Y & MVRR should be held invalid.

I. *Did the State of Mississippi Have the Authority to Alienate the Lands in Question?* Asked another way, is the trust created by the State of Georgia in sixteenth section school lands of such a nature that the lands could never be sold or otherwise disposed of?

The practice of setting apart section sixteen of every township of public lands for the maintenance of public schools is traceable to the Ordinance of 1785, being the first enactment for the disposal by sale of the public lands in the Western Territory. The appropriation of public lands for that object became a fundamental principle by the Ordinance of 1787, which settled terms of compact between the people and states of the Northwest Territory. This principle was extended in 1802 by compact between the United States and Georgia to the Southwestern Territory. Upon the survey of a township and the designation of the specification, the compact had an object upon which it could attach, and if there was no legal impediment, the title of the state in the sixteenth section land became a legal title. *Cooper v. Roberts,* 18 How. 173, 178–79, 15 L.Ed. 338, 339–40 (1855). The question becomes then, what is the nature of the state's title to the sixteenth section land in question? In *Cooper,* the Supreme Court noted that it had been the usual practice for Congress to authorize the sale of sixteenth section lands if the state desired it. *Cooper,* 18 How. at 181, 15 L.Ed. at 341; *see, e.g.,* Act of May 19, 1852, 10 Stat.Chap. 35 (authorizing legislature of Mississippi to sell and convey in fee simple all or any part of lands reserved by Congress for use of schools within state provided money raised from sales was used to support schools). The Supreme Court noted, however, that this consent of Congress was not, perhaps, necessary. The Court found that the trust created by these compacts relate to a subject "of universal interest, but of *municipal concern,* over which the *power of the state is plenary and exclusive." Cooper,* 18 How. at 181–82, 15 L.Ed. at 341 (emphasis added). The Court

held that the grant is to the state directly, without limitation of its power, though the Court observed that there was and is a sacred obligation imposed on its public faith. As to the nature of that sacred obligation, the Supreme Court in *Alabama v. Schmidt*, 232 U.S. 168, 173–74, 34 S.Ct. 301, 302–03, 58 L.Ed. 555 (1914) described it as "honorary," and stated that even in honor it would not be broken by a sale and substitution of a fund.

■ *Schmidt* involved a suit brought by the State of Alabama to recover possession of a specified tract of sixteenth section land that the respondent had adversely possessed. The Alabama adverse possession statutes in force at the time allowed a citizen to adverse possess against the state. The State of Alabama argued that the statute was invalid because it conflicted with the act of Congress making the original grant to Alabama and that the state thus had no power to divert sixteenth section lands from the specific use to which they were dedicated by the act of Congress. In response to the contentions of Alabama, the Supreme Court cited *Cooper* for the proposition that the grant to the state was absolute, and that the state had authority to subject the sixteenth section lands in its hands "to the ordinary incidents of other titles in the state...." *Schmidt*, 232 U.S. at 174, 34 S.Ct. at 303. The Court noted that although the gift to the state was absolute, there was a "sacred obligation" imposed upon its public faith. The Court described this obligation as "honorary." *Black's Law Dictionary* defines "honorary" in this way:

> As applied to public offices and other positions of responsibility or trust, this term means either that the office or title is bestowed upon the incumbent as a mark of honor or complement, without intending to charge him with the active discharge of the duties of the place.... In other contents or usages, it means attaching to or growing out of some honor or dignity or honorable office, or else it imports in obligation or duty growing out of honor or trust only *as distinguished from legal accountability*. (emphasis added).

Thus, since the legislature had the power to subject sixteenth section land to the "ordinary incidents" of other titles without violating its honorary obligation, it is apparent that the grant to the railroad was neither *ultra vires* nor a breach of honor, assuming a valid consideration was received.

II. *Was There Valid Consideration for the Grant?* In arguing that the grant was void as a violation of the trust due to a lack of consideration, Madison County has brought to the attention of the Court a recent case decided by the Mississippi Supreme Court subsequent to the submission of briefs on this motion. In *Hill v. Thompson*, No. 07–58509, —— So.2d —— (Miss. October 11, 1989), the court struck down a lease of a tract of sixteenth section land for inadequate consideration based upon the donation clause of Article 4, Section 95 of the Mississippi Constitution, *supra*. The lease in question was for ninety-nine years and was supported by a one-time consideration of $7.50. The court found the consideration paid for the lease of property located within the city limits of Forest, Mississippi, to be so grossly inadequate as to amount to a donation in violation of section 95. Additionally, the court found that the common law rules of private trusts apply to public school trust lands. Those rules prohibit the trustee from giving away, appropriating to his own use, or otherwise disposing of the corpus of the trust in derogation of the rights of the beneficiaries. Madison County argues that the holding in *Thompson* mandates a ruling in its favor.

The Court finds, however, that *Thompson* is factually and legally distinguishable from the case at bar. First, *Thompson* was decided pursuant to the authority of section 95. Section 95, which prohibits donations of public property to private persons or corporations, was not in existence in 1882, the time the charter granting title to the railroad was enacted, nor is there any indication that section 95 was meant to be retroactive in effect. Secondly, in *Thompson*, it was the county board of supervisors that executed the invalid lease.

In the instant case, the grant was an act of the legislature, and therefore entitled to a presumption of validity. *See Clark v. State ex rel. Mississippi State Medical Assoc.,* 381 So.2d 1046, 1048 (Miss.1980). A third ground of distinction is that of the difference in the nature of the grants themselves. In *Covington County v. State Highway Commission,* 188 Miss. 274, 194 So. 743 (1940), the Mississippi court held that the state legislature has the power and authority to deal with sixteenth section lands in such a way as to make them accessible to the ways of travel. This fact alone serves to adequately distinguish the instant case from *Thompson. Covington County* involved a suit by the board of supervisors of Covington County against the State Highway Commission alleging that the Commission illegally entered onto sixteenth section lands over which the county was trustee and committed waste thereon by cutting a right-of-way for a highway allegedly in violation of the rights of the beneficiaries of the school lands trust. The illegality was alleged to have resulted from the fact that the land was "taken" by the highway department without compensation being paid to the board for the public interests vested in the inhabitants of the county for educational purposes. In holding that no compensation was required to be paid, the court noted that the public interest is subject to legislative control, and that the legislature may devote public property to an additional public use without compensation being paid for such use. As the court stated:

> Public highways are for the benefit of the public, and their construction across sixteenth sections will benefit townships and make the property left more desirable under private leases.

*Covington County,* 194 So. at 745. This is exactly the prerogative which the legislature exercised in chartering the Y & MVRR in 1882 and authorizing the grant of its right-of-way in fee simple. Since there were no statutes or constitutional provisions in effect in 1882 which would have prohibited the grant of lands to the Y & MVRR, the legislature of that year was perfectly free to conclude that the interests of all parties were served by the existence of the railroad line from Jackson to Yazoo City passing through the sixteenth section in question. In fact, the charter itself states that its purpose was:

> [i]n order to induce the investment of capital in the construction, maintenance and operation of such a railroad and branches, and thus to develop the resources and wealth of this State....

The Court further takes note of the fact that the town of Flora grew up on the sixteenth section in question around the Y & MVRR track. It must be remembered that in 1882, railroads were the most efficient and powerful means of land transportation known to man.

It is clear from the foregoing that the grant in question is not void for lack of consideration. In fact, the sixteenth section through which the right-of-way runs was rendered more valuable by the construction of the railroad.

III. *Did the Legislature Intend to Grant to the Railroad Any Interest in School Trust Lands?* Madison County cites two separate sets of statutory provisions in support of its argument that the legislature, having dealt concretely and specifically with the leasing of sixteenth section school trust lands in those provisions, should not be construed as having included those lands in a grant out of "all lands belonging to the state."

■ The first set of provisions is sections 732 through 735 of Chapter 16 of the Mississippi Code of 1880, which govern the use and administration of sixteenth section school lands. Section 732 required that if sixteenth section land were to be *leased,* the board of supervisors was to appoint three citizens of the township in question to appraise the land to be leased and to report the same to the board. Section 735 forbade the leasing of sixteenth section school lands for less than the appraised value. The Plaintiff relies upon the well-established rule of construction that a statute of general import must yield to one of specific import. The Court finds, however, that the grant to the Y & MVRR is clear and unambiguous, requiring no construction. *See Pittman v. Mississippi Public*

*Service Comm'n,* 538 So.2d 367, 371 (Miss. 1989).

The second statutory provisions cited by the Plaintiff are sections 4149, 4154 and 4155 of the Mississippi Code of 1892, which provide that sixteenth section land shall never be sold and set forth the method by which such land shall be leased by the board of supervisors. These statutes are inapplicable to anything that occurred in 1882, having been enacted ten years later and pursuant to a new constitution.

Finally on this point, the Plaintiff argues that had the legislature intended to grant an interest in sixteenth section lands to the railroad it would have been simple enough for the legislature to specifically refer to those lands in the charter. The Court finds the opposite proposition to be more compelling: that is, it would have been simple enough for the legislature to have specifically *excluded* sixteenth section lands from the grant of the right-of-way to the railroad. Clearly, the legislature did not so exclude the sixteenth section lands, and this Court will not infer such an intent where the charter is clear and unambiguous.

IV. *Are Sixteenth Section Lands Those "Belonging to the State"?* The Plaintiff argues that because the sixteenth section lands are held in trust, they do not technically "belong to the state" as that phrase is used in the charter of the railroad. Section 7 of the charter states:

BE IT FURTHER ENACTED, That the right of way is hereby granted said company to pass in and through the State of Mississippi. . . . [w]herever said railroad or the branches, spurs or laterals aforesaid are located, over any lands *belonging to this State,* the title in fee simple. . . .[S]aid company is hereby authorized . . . to enter upon and appropriate all . . . lands . . . as may be private property . . . and in case the company fails to agree with the owners of such lands . . . [on] the price to be paid for the fee simple title thereto . . . the company may proceed to condemn such lands. . . .

█ The contention of the Plaintiff is that since the state only held legal, as opposed to legal and equitable, title to the sixteenth section lands, the grant of any lands "belonging to this State" did not include sixteenth section lands. What has been said previously with regard to the ability of the legislature to subject sixteenth section lands to the "ordinary incidents of other titles in the state" is sufficient to refute this assertion. *See Schmidt, supra; Cooper, supra.* Furthermore, a plain reading of section 7 of the charter reveals that the legislature intended to make a distinction between publicly versus privately owned land, not a distinction between lands to which the state held only the legal title versus lands over which it held legal and equitable title. With regard to privately owned land, the charter provides that in case the railroad failed to agree with the owners of the lands necessary to the completion of the railroad, or in case the owner was under some disability to contract, the railroad could proceed to condemn the lands and obtain fee simple title in that fashion. In contrast to that, the state granted fee simple title to any portion of the railroad right-of-way which traversed property "belonging to this State."

## CONCLUSION

In sum, the Court finds that ICRR owns title to the right-of-way in question pursuant to the grant contained in section 7 of the charter of the Y & MVRR and the subsequent merger of the two railroads. The legislature in passing the charter in 1882 contravened no existing statute or constitutional provision nor violated its trust obligations to the school children of the State of Mississippi.

IT IS THEREFORE ORDERED that the Motion of the Defendant ICRR for Summary Judgment be granted and that the Complaint of the Plaintiff Madison County be dismissed with prejudice. The Court will issue a separate judgment in accordance with this opinion pursuant to rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED.