J. Randolph LIPSCOMB,
et al., Plaintiffs,

v.

The COLUMBUS MUNICIPAL SEP-
ARATE SCHOOL DISTRICT, et
al., Defendants.

No. 1:92CV020–S–D.

United States District Court,
N.D. Mississippi,
Eastern Division.

March 22, 2000.

Hunter M. Gholson, Dewitt T. Hicks, Jr., Gholson, Hicks & Nichols, Columbus, MS, Joseph Randolph Lipscomb, Columbus, MS, Luther T. Munford, Phelps Dunbar, Jackson, MS, Thomas G. Wallace, Thomas G. Wallace & Associates, Columbus, MS, for Randolph J. Lipscomb, Mayor, City of Columbus, City Council of the City of Columbus, Mississippi.

Frank D. Montague, Jr., Montague, Pittman & Varnado, Hattiesburg, MS, for The Columbus Municipal Separate School District, Tom Cooley, Owen Bush, Glenn Lautzenhiser, Sarah Jones.

Dion J. Shanley, Hickman, Goza & Gore, Oxford, MS, P. Roger Googe, Jr., Gerald W. McWhorter, Alan M. Purdie, Wilson H. Carroll, Mississippi Attorney General's Office, Jackson, MS, for State of Mississippi, Honorable Richard Molpus, Secretary of State.

Felicia C. Adams, U.S. Attorney's Office, Oxford, MS, for United States Department of Housing and Urban Development.

Wilson H. Carroll, Mississippi Attorney General's Office, Jackson, MS, William Mack Cameron, Jackson, MS, for Richard Molpus.

Dion J. Shanley, Hickman, Goza & Gore, Oxford, MS, Wilson H. Carroll, Mississippi Attorney General's Office, Jackson, MS, William Mack Cameron, Jackson, MS, for Eric Clark.

## *OPINION*

SENTER, Senior District Judge.

Plaintiff J. Randolph Lipscomb initiated this class action seeking a declaration as to the validity of certain leases of Mississippi sixteenth section land.

In 1816, the United States purchased for $130,000 from the Chickasaw Nation title to land that now comprises parts of northern Alabama and Mississippi. In 1817, following a pattern that had been in place since before the ratification of the U.S. Constitution, *see Papasan v. Allain,* 478 U.S. 265, 268–69, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), Congress authorized the survey and sale of all these lands, except for "section No. 16, in each township, which shall be reserved for the support of schools therein." Land Sales Act of March 3, 1817, 3 Stat. 375. Parts of the present-day City of Columbus, Mississippi, fall within these sixteenth section lands.

Responding to the Congressional direction, Mississippi included in its 1817 Constitution a provision mandating that sixteenth section lands were never to be sold and that all funds acquired by the state through the rental or lease of such lands were to be set aside "for the use of schools." *See* Miss. Const. of 1817, art. 6, § 20. In 1821, the Mississippi legisla-

ture authorized the incorporation of the town of Columbus, which was located at an important crossing of the Tombigbee River. Intending to promote the development of Columbus, the legislature also established the Franklin Academy, the first public school in Mississippi. The legislature authorized the president and trustees of the Academy to lease certain lots in the Columbus sixteenth section "for the term of ninety-nine years, reserving an annual rent therefor." *See* 1821 Miss.Laws Ch. XLVI, p. 73–74. The initial annual rent was to be determined by public auction. In 1830, concerned about the problem of lessees forfeiting their leases, the legislature amended the 1821 statute and ordered the insertion of the phrase "renewable forever" in all past and future Columbus sixteenth section leases. *See* Act of December 13, 1830, 1830 Miss.Laws 14th Sess. Ch. II, pp. 9–10. This "renewable-forever" provision appears to be peculiar to sixteenth section leases in the City of Columbus, Mississippi, and nowhere else.

In 1890, Mississippi adopted a new constitution, parts of which are still in force today. The 1890 Constitution placed a new condition on all sixteenth section lands in the state, directing that "[l]and belonging to, or under control of the state, shall never be donated, directly or indirectly, to private corporations or individuals." Miss. Const. of 1890, art. IV, § 95. Moreover, the 1890 Constitution limited the duration of leases of sixteenth section lands to twenty-five years. *See id.* art. VIII, § 211. In 1913, fears arose among the Columbus leaseholders that the constitution's twenty-five year leasing limit might invalidate their pre-existing leases. Mindful of the Contracts Clause of the United States Constitution, *see* U.S. Const. art. I, § 10 ("No State shall ... pass any ... law impairing the obligation of contracts...."), the Mississippi legislature in 1914 responded to the Columbus lessees' concerns by passing a law authorizing the renewal of the Columbus leases in 1920 at their origi-

nal terms. *See* 1914 Miss.Laws Ch. 462. The leases were so renewed.

In 1989, however, the Columbus lease-holders again became concerned following a Mississippi Supreme Court decision. In *Hill v. Thompson*, 564 So.2d 1 (Miss.1989), the court held that a ninety-nine year lease of a plot of sixteenth section land for the sum of $7.50 was voidable under the non-donation principle of § 95 of the 1890 Mississippi Constitution. As the court acknowledged, its decision had the effect of invalidating hundreds of sixteenth section leases across the state. *See id.* at 12. Notably, however, the case did not explicitly address leases with "renewable forever" clauses.

In 1988, after surveying Mississippi's case law, counsel for the Department of. Housing and Urban Development in Jackson, Mississippi, determined that the 1890 Constitution rendered leaseholds of sixteenth section land in Columbus "virtually uninsurable." In 1990, responding to *Hill* and unhappy with the revenues generated by the Columbus leases, the president of the Columbus School Board announced that the Columbus sixteenth section leases were invalid and would have to be renegotiated. Various leaseholders responded by filing suit in Chancery Court in Lowndes County, Mississippi, seeking a confirmation of title. On January 16, 1992, however, the suit was voluntarily dismissed to permit the filing of this complaint in federal court.

A few days later, on January 24, 1992, Randolph Lipscomb filed a putative class action in this court against the Columbus School District, the Mississippi Secretary of State (who is statutorily authorized to administer sixteenth section lands), and HUD. His suit sought a declaration that the Columbus leases were valid and that the lessees possessed the right to renew the leases in 2019 at their original terms. On July 31, 1992, recognizing that at least 1,473 lessees had similar interests in Lipscomb's suit, this court certified a class pursuant to Fed.R.Civ.P. 23. Lipscomb moved for summary judgment, and the

Secretary of State moved 1) to decertify the class and 2) for the district court to abstain.

On July 23, 1996, this court granted the Secretary of State's motion to abstain, citing *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The court reasoned that the case required an in-depth examination of Mississippi statutes and constitutional provisions, a task it felt was best left to the Mississippi courts.

On June 23, 1998, the Fifth Circuit Court of Appeals, in *Lipscomb v. Columbus Municipal Separate School District*, 145 F.3d 238 (5th Cir.1998), found this court in error in declining to exercise jurisdiction in this case and found that this litigation does not implicate any issue of state law that is so ambiguous as to justify abstention. Following remand to this court, the plaintiffs filed their revised motion for summary judgment; the Mississippi Secretary of State filed his cross-motion for summary judgment with a motion to decertify the class. HUD moved to be dismissed from the case. This court now proceeds to make its findings of fact and rulings of law pursuant to Rule 56 of the FRCP.

I.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FRCP 56(c).

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden then shifts to the nonmovant to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genu-

ine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. While all legitimate factual inferences must be viewed in the light most favorable to the nonmovant, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the nonmovant. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II.

■ Lipscomb contends that prior to 1890, lessees in Columbus obtained, pursuant to statutory authorization, 99–year leases on Columbus property that were renewable at their original terms forever. Lipscomb contends that the school district cannot employ the 1890 constitution's prohibition against the donation of public lands to invalidate the Columbus leases, because doing so would impair the obligations of a contract in violation of the federal contracts clause. Lipscomb asserts that the 1914 legislation, which confirmed that the leases could be renewed in 1920 at their original terms, is irrelevant. Simply stated, it is the contention of plaintiffs that if the lessees enjoyed, before 1890, a contractual right to renew their leases in perpetuity, they did not need a statute in 1914 to restate that right for them.

The Secretary of State argues that the 1830 statute granting the trustees of Franklin Academy the right to issue renewable-forever leases was later repealed by statutes in 1830 and 1833.

The statute authorizing the Columbus trustees to issue renewal-forever leases was enacted on December 13, 1830, and reads in pertinent part:

[T]he Trustees of said Franklin Academy be, and they are hereby authorized to lay off and lease lots, not to consist of more than ten acres each, for the same time, and in like manner, and on like condition with those in the present plan of the town of Columbus, throughout the section; and that said Trustees be, and are hereby authorized to make out all leases for the lots of said section, for ninety nine years, dating from the first leasing of lots in said town of Columbus, renewable forever. Providing, always, that the payment of leases on said lots be made annually in advance, as before; and that all leases heretofore made of lots, by the said Trustees, be renewable at the expiration of the time for which these were leases, in like manner as above, provided for, in cases of lots to be leased hereafter.

Act of December 13, 1830, 1830 Miss.Laws 14th Sess. Ch. II, pp. 9–10. The Secretary of State notes, however, that three days later, the Mississippi legislature passed a new law. This statute, dated December 16, 1830, directed the trustees of schools in a variety of counties, including Lowndes (the county containing Columbus), to lease sixteenth section lands for fixed ninety-nine year terms, whenever a "majority of the heads of families in any township" requested them to do so. Act of December 16, 1830, 1830 Miss.Laws 14th Sess. Ch. II, pp. 330–31. The December 16 statute also contained a repealing clause providing that "all acts and parts of acts coming within the meaning and purview of this act be, and the same are hereby repealed." *Id.* Furthermore, in 1833, the Mississippi legislature passed another sixteenth section statute, with substantially the same provisions as the December 16, 1830 statute. *See* Act of February 27, 1833, 1833 Miss.Laws pp. 452–54. Like the second 1830 act, the 1833 statute contained a clause dictating that "all acts and parts of acts contravening the provisions of this act be and the same are hereby repealed." *Id.*

The Secretary of State contends that the second 1830 statute and the 1833 statute both repealed the first 1830 statute, which permitted renewable-forever leases. Accordingly, argues the Secretary of State, there is a conflict between the 1890 Constitution and the pre-existing Columbus leases as to the authority of the school trustees to enter into renewable-forever leases before 1890. If the trustees lacked such authority, contends the Secretary of State, the federal constitutional question in this case would be mooted, and plaintiff would be entitled to no relief.

The Secretary of State is manifestly wrong. In *Street v. City of Columbus,* 75 Miss. 822, 23 So. 773 (1898), Columbus leaseholders challenged the authority of Columbus to tax the capital value of their leases, a value which had arisen because the locked-in rents did not reflect the true value of the leaseholds. In holding that Columbus could so tax the leases, the court repeatedly acknowledged that the Columbus leases were renewable forever. *See, id.,* at 773. ("These leases, as we learn from the briefs of counsel, the leases themselves, and the act of the legislature under which they were made, are renewable forever, at the option of the lessees.") *id.* at 774 (repeatedly noting that a statute made the leases renewable forever). Although the precise question of the renewability of the Columbus leases was not before the *Street* Court, the court's affirmation of the leases' perpetual terms was not dicta, for acknowledging that the leases were so renewable was necessary to establish the extent of their capital value.

The *Street* opinion made no mention of the two statutes cited by the Secretary of State, in all likelihood because no party thought them relevant to the Columbus leases. Indeed, no Mississippi authority has ever suggested that the two statutes affect the renewable-forever nature of the Columbus leases. *Cf. City of Houston,* 482 U.S. at 469, 107 S.Ct. 2502 (noting that simple fact that statute has not previously been construed does not supply requisite ambiguity to justify abstention). On the contrary, an 1848 official compilation of the Mississippi Code lists all statutes governing the Columbus sixteenth section land, but does not refer to the two laws cited by the Secretary of State. *See* A. Hutchinson, *Code of Mississippi* 246 (1848).

Although the *Street* opinion alone removes most doubt about the validity of the perpetual terms in the Columbus leases, this court is confident that even if the *Street* Court had confronted the Secretary of State's two statutes, it would have found them inapplicable to Columbus. By their terms, the December 16, 1830, and February 27, 1833, statutes did not dissipate any pre-existing leases nor were they self-executing. Rather, the two statutes provided that the trustees of school districts in Lowndes County were to lease sixteenth section lands for ninety-nine year terms only when the majority of households in a community requested them to do so. There is no evidence to suggest that the households in Columbus ever voluntarily invoked those statutes. Indeed, it would have been absurd for them to have done so. Both the December 16, 1830, and February 27, 1833, statutes mandated a minimum lot size of eighty acres. The eighty-acre minimum indicates that the legislature was contemplating rural lots. By 1830, however, the Columbus sixteenth section was urban. In accordance with its urban nature, the December 13, 1830, statute that specifically empowered the Columbus school trustees to authorize renewable-forever leases permitted lots of no more than ten acres each. The Mississippi legislature in enacting the general December 16, 1830, statute could not possibly have intended to repeal its more specific December 13, 1830, law, passed just three days earlier. If the December 16, 1830, statute was a mandatory, overriding provision it would have allowed only eight lots in the 640–acre Columbus sixteenth section, thereby depopulating the City of Columbus.

The Secretary of State also contends that the December 13, 1830, statute

authorizing renewable-forever Columbus leases 1) was invalid under the 1817 Mississippi Constitution, which prohibited the "sale" of sixteenth section land, and 2) violated the trust under which Mississippi held the land. While a renewable-forever lease may in practical effect resemble a "sale," the United States Supreme Court has acknowledged that in legal effect such instruments are leases. *See Bosley v. Wyatt,* 55 U.S. (14 How.) 390, 396, 14 L.Ed. 468 (1852); *see also Street,* 75 Miss. 822, 23 So. 773 (construing the Columbus leases as "leases"). The contention that the leasing of this sixteenth section land violated the trust for the benefit of school children under which Mississippi held the land is also easily dispatched. As previously stated with respect to indistinguishable Choctaw sixteenth section land in Mississippi, the trust under which Mississippi operated at best created an honorary, not a mandatory, obligation on the part of the state to administer the lands for the benefit of school children. *See Madison County Bd. of Educ. v. Illinois Central R.R. Co.,* 939 F.2d 292, 303–05 (5th Cir. 1991); *see also Alabama v. Schmidt,* 232 U.S. 168, 34 S.Ct. 301, 58 L.Ed. 555 (1914) (permitting title to similar sixteenth section lands in Alabama to pass by adverse possession, because trust obligations were merely honorary in nature). Moreover, it is doubtful that the leasing of the Columbus sixteenth section land even violated the honorary trust. The legislature apparently authorized the renewable-forever terms in the leases to prevent lessees from forfeiting, an action that itself would deprive the schools of funds. The renewable-forever terms encouraged the development of the City of Columbus, an event at least indirectly beneficial to the schools. *See Madison County,* 939 F.2d at 306–07 (reasoning that the development of railroads generally benefitted education in Mississippi, even if the railroad companies received sixteenth section right-of-ways for free).

The Secretary of State has advanced a variety of other arguments against the granting of relief to the class. He notes that the price terms of Lipscomb's own leases have changed throughout the years, perhaps suggesting that Lipscomb's leases were not renewals but were in fact new leases. The Secretary of State also argues that tax sales appear in the chain of title of a number of the Columbus leases, thereby terminating those leasehold leases. In the process of developing the City of Columbus, the original lessees and their successors at times subdivided the original parcels and conveyed their leasehold interests in the subdivided parcels. This caused a difference in rentals, but in the aggregate, the rentals from these parcels remained substantially the same, negating the Secretary of State's assertion that these were in fact new leases.

Also, the fact that tax sales appear in the chain of title to some of the leases should not prevent the remainder of the leaseholders from asserting the validity of their leases. The fact remains that the unredeemed tax sales are minuscule when compared to the overall number of parcels owned by the plaintiff class. In plaintiffs' revised motion for summary judgment, they seek to exclude from the relief sought those parcels with post–1890 unredeemed tax sales in the chain of title insofar as that unredeemed tax sale might affect the validity of the lease. The court finds that the interests of all the class members remain the same, but those class members with post–1890 unredeemed tax sales in the chain of title will be excluded from any relief granted herein and, thus, must be dealt with on an individual basis through the filing of individual suits.

The court finds there are no genuine issues of material fact in this case, and it is ripe for summary judgment. Plaintiffs' motion for summary judgment will be sustained, and defendants' motion for summary judgment will be denied. HUD will not be dismissed from this cause, but will remain as a "nominal party" for enforcement of the stipulation it entered into in this case, agreeing to be bound by this

court's judgment. However, HUD will not be responsible for any part of plaintiffs' attorneys' fees in the event fees are granted. Likewise, the Columbus Municipal Separate School District shall remain a "nominal party" for purposes of enforcing this judgment, but shall not be responsible for any part of plaintiffs' attorneys' fees.

### III.

There are many unresolved motions filed by the parties to this case which will be disposed of as follows:

1. The motion and supplement filed by the Secretary of State to decertify the class shall be denied.

2. The motion by the Secretary of State to strike portions of the affidavits of Dorothy Pridmore and John Krigler, and the motion by plaintiffs to strike the state's expert shall be denied.

3. All other motions to strike and supplement the record and present offers of compromise are hereby denied.

### SUMMARY

In the 176–plus years these leases have been in existence, their validity has been confirmed by the Mississippi Supreme Court in 1898, the Mississippi Legislature in 1914, by the Fifth Circuit's prior ruling in this case, and the findings by this court. The leaseholders include not only corporations, but also individuals, the City of Columbus, Lowndes County, twenty-eight churches, Mississippi University for Women, a synagogue, and other nonprofit institutions. Absent a binding judgment in federal court that declares the leases valid, there will be a hornet's nest of litigation in Columbus as leaseholders sue their predecessors in title for breach of their "leasehold warranty deeds."

It has now been approximately nine years since the Secretary of State, HUD, and the school district publicly attacked the Columbus sixteenth section leases. This attack affected leaseholders in the Columbus sixteenth section by diminishing the fair market value of their property and creating a barrier to obtaining financing for the sale of these interests. It is now time to put this matter to rest. The court will enter a final judgment declaring, with respect to the leases of plaintiff Randolph Lipscomb and all other class members, except those class members with a post–1890 unredeemed tax sale in their chain of title, the following:

1. "Renewable forever" in the Columbus sixteenth section leases means all covenants are renewable forever, including the rental covenants.

2. The 99–year renewable-forever leases are not sales.

3. The contracts clause of the U.S. Constitution, Article I, § 10, Clause 1, protects the Columbus sixteenth section lease covenants from impairment under subsequent state law.

4. The December 13, 1830, statute authorizing the 99–year renewable-forever leases in Columbus did not violate any trust obligation.

5. The December 13, 1830, statute was not repealed before 1890.

6. The 1920 leases are renewable leases and may be renewed on August 1, 2019, upon the same covenants unless the lease has been or is subsequently forfeited for failure to comply with the terms of the lease.

7. The terms of the 1920 leases properly allow redemption by the previous lessee after a tax sale, because notice and an opportunity to redeem are required before a 99–year renewable-forever lease may be forfeited.

Let judgment issue accordingly.