Dear Mr. Clement:
You have requested an opinion of this Office regarding the legality of a lease exchange agreement between Plaquemines Parish School Board ("School Board") and a private entity of a certain tract of land located in Plaquemines Parish. Specifically, you ask whether the School Board may undertake a lease swap" of land identified as "River Lot 16," and more technically known as T20S, R18E, Sec. 16, for some privately owned property adjacent to Belle Chasse High School, thereby abating the need to go through the process of advertising the subject property for lease pursuant to the public bid laws.[1]
Classification of the Property
Typically, land identified as Section 16 or Sixteenth Section property is held in fee title by the State of Louisiana and is reserved for the use of schools in the township in which the land is situated.[2] The law that applies to the sale, lease, and exchange of traditional sixteenth section land is unique.[3] However, based upon the voluminous documentation that you have provided to this Office (which is summarized below), it is clear that this particular tract of land is not a "traditional" sixteenth section.
Traditional sixteenth section property is typically a full 640-acre tract of land, in place, that is part of the rectangular system of survey that was implemented *Page 2 
nationwide by the United States government as new territory was acquired.[4] Congress, in 1806, set aside every sixteenth section for use by the schools in the local jurisdictions.[5] This property vested, in fee simple interest, in the State upon statehood, to be utilized for the benefit of its schools.[6]
Generally exempted from this allocation of lands to the State for the use of schools were lands that were already reduced to private ownership at the time that the federal government acquired new territory. Such property in Louisiana was often 40 or 80 arpent-deep tracts along water courses that was patented or granted to private individuals by the former sovereigns of France or Spain.[7] Although these tracts were often incorporated into the American rectangular system of survey by assigning them numbers in the usual fashion, those that happened to be numbered "16" were not converted from private ownership to government ownership by virtue of the number assigned to them.[8] Thus, because the private landowner retained title to these sixteenth sections, the State and its schools were "shorted."[9] In these cases, in order to compensate for such shortages, other provisions were made by the federal government for school lands within that particular township.[10]
The property that is the subject of your opinion request, as is noted above, is a river lot. Indeed, the maps that you have included with your request, at first glance, would seem to indicate that this property simply happened to be numbered "16," and that due to its size (i.e., less than 640 acres) and location (i.e., along the Mississippi River), would have been property patented or granted by a former sovereign prior to statehood in 1812. However, as is clearly demonstrated from your documentation, [11] the subject property was not patented or granted by Kings Louis XIV or Louis XV of France, Napoleon Bonaparte, or King Charles III of Spain — all former sovereign rulers of the relevant portions of the territory now known as Louisiana. Rather, this property, as indicated on the enclosed Tobin map, was acquired in fee title by the United States when it acquired the Louisiana Territory in 1803. Thus, unlike most typical river lots (also known as radiating sections) of less than 640 acres, the subject property was not reduced to private ownership prior to its acquisition by the United States.
Further making the subject property unique is the reality that this sixteenth section was never patented to the State as school land by the act of Congress in *Page 3 
1806.[12] Instead, the United States continued to hold fee title to this property until it was severed from federal ownership as indemnity land under the authority of 4 Stat. 179 (1826).[13]
Indemnity land is the name for property that was provided by the federal government to the states to make up for shortcomings in prior-granted sixteenth section lands.[14] In other words, if a particular sixteenth section that was given to a state for use by its schools was less than 640 acres or if a particular sixteenth section was wholly or partially located (by happenstance) on the sovereign water bottoms of a state, the federal government would allow the state to select indemnity land from other federal lands within the state to make up for the difference in acreage.[15] Although, in most cases, indemnity land is dealt with under sixteenth section law due to the shared character of the land (i.e., both are given to the State as dedicated land for school use), as discussed more fully below, under some circumstances, there is different law that applies to indemnity land.
It is within this historical framework that any consideration of the disposal (whether by sale, lease, or exchange) of the subject property must be examined. The legal framework necessary to answer your request follows.
Exchange and Lease of School Lands, Generally
There is no doubt that school boards are constitutionally permitted to exchange property when such an exchange (which would encompass the "lease swap" here contemplated) is in the best interests of the schools.[16] The answer to whether the public bid process must be followed when so exchanging is found in La. Atty. Gen. Op. No. 01-0321:
Consequently, LSA-R.S. 17:87.6 authorizes any parish or city school board to sell, lease or otherwise dispose of, at public or private sale, for cash or on terms of credit, any school site, building, facility or personal property which is not used and, in the judgment of the school board, is not needed in the operation of any school or schools within its jurisdiction. Any such sale, lease or disposal of such school property shall be on such terms and conditions and for such consideration as the school board shall describe.
We take cognizance of the fact that LSA-R.S. 41:891 et seq partially repealed LSA-R.S. 17:87.6 as a more recent expression of legislative will, but this office has previously concluded that the *Page 4 
repeal is with regard to sales of school board property, not exchanges [or leases], and LSA-R.S. 17:87.6 remains viable relative to dispositions other than sales, more specifically, exchanges of property or leases. (See Atty. Gen. Op. No. 75-1261, Atty. Gen. Op. No. 80-275, and Atty. Gen. Op. No. 93-130).
Thus, previous opinions of this Office have noted that the exchange of property by school boards need only comply with La.R.S. 17:87.6 and not La.R.S. 41:891, et seq.[17] The former statute does not carry with it the requirement that the school board advertise the proposed exchange or put the proposed exchange out for auction or bids. The only requirement, under the previous opinions of this Office, has been that the acquired property indeed be used for school purposes.[18] After careful consideration, it continues to be our opinion that the exchange of school board lands, provided that La.Const. Art. VII, Sec. 14, is not violated due to property value differences, can validly be accomplished without public advertisement or bids/auctions.[19] This basic legal framework is not applicable to sixteenth section and indemnity lands. Because the purpose of indemnity land is to account for sixteenth section land shortages and because the sixteenth sections are provided to benefit the schools, caution must be employed so as not to undermine this charge on the land. Accordingly, the general law related to the divestiture of surplus property does not apply to indemnity lands (the same as it does not apply to sixteenth section lands). Nonetheless, in situations of exchanges of non-sixteenth section and nonindemnity school lands, we here adopt the reasoning expressed in La. Atty. Gen. Op. No. 01-0321 for the purposes of your opinion request, as we believe that it continues to represent sound legal reasoning.
It is thus the opinion of this Office that the sale, lease, or exchange (encompassing the contemplated lease swap) of school board property may be undertaken by a lease or an exchange. The law does allow for any such transfer of the subject property without the need to follow the advertising and competitive bid requirements of the public bid law. However, due to the unique classification of the subject property as indemnity lands, the analysis does not stop there.
The Lease or Exchange of Indemnity Land, Specifically
Indemnity land in Louisiana, though provided to account for incomplete sixteenth sections, is not always subject to the same law as sixteenth sections. In particular, the sale of indemnity lands is separately provided for by statute.[20] However, there are no specific provisions for the lease or exchange of indemnity *Page 5 
land. Rather, it appears that this activity is covered by the general law related to the sixteenth section lands.[21]
The School Board's general authority to divest sixteenth section and indemnity lands, as noted above, is subject to the restrictions on the disposal of sixteenth section lands.[22]
This is confirmed by the provisions of La.R.S. 41:891, etseq., governing the disposal of unused school lands. By its own terms, La.R.S. 41:891 does not apply to sixteenth section lands. Thus, the relevant law for the disposal of sixteenth section and indemnity lands is found at La.R.S. 41:711, et seq. This law contains no provisions allowing an exchange of sixteenth section property. Therefore, because the School Board may not exchange sixteenth section land, it is the opinion of this Office that it similarly cannot exchange the subject indemnity land.
Recognizing that the contemplated "lease swap" may not be identical to a property exchange, we here present the School Board's options for other dispositions of the subject property. The sale or lease of sixteenth section (and thus, indemnity) lands is permitted, but it must meet the statutory requirements of La.R.S. 41:711, et seq. Under this law, a school board may only lease these lands if a majority of the legal voters areagainst the sale of the land.[23] Thus, it is the opinion of this Office that, should the School Board wish to style the "lease swap" as a lease (a lease being permissible under the law) that it must take the sense of the voters regarding the sale of the property first. If, and only if, the voters are against the sale of the subject property can the School Board then proceed with its lease.[24]
Conclusion
The subject tract has a unique history. The documentation that you provided clearly demonstrates that this property was never reduced to private ownership. River Lot 16 is a section that just happens to be numbered sixteen, but which was not given to the State as school lands. Rather, the property was federal land that was selected by the State of Louisiana as indemnity land.
It is the opinion of this Office that the law of Louisiana with respect to sixteenth sections applies to the lease or exchange of this indemnity property. Accordingly, although the sale, lease, or exchange of nonsixteenth section or indemnity lands by a school board is permissible without the necessity of submitting to the public bid laws, specific provisions apply to the subject property as indemnity land that are actually more onerous than those imposed by the public bid laws. Thus, while there is no need for the School Board to follow the *Page 6 
public bid law requirements in order to undertake this "lease swap," the fact that the land involved is indemnity land requires the sale and lease laws specifically applicable to those types of land to be followed (i.e., La.R.S. 41:711, et seq., and especially La.R.S. 41:716, which requires that a majority of the legal voters be against the sale of the land).
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
Sincerely yours,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
BY:__________________________ RYAN M. SEIDEMANN ANDREW J.S. JMMONVILLE Assistant Attorneys General
JDC/RMS/AJSJ/tp
[1] La.R.S. 38:2211, et seq.; La.R.S. 41:1211, etseq.
[2] La. Atty. Gen. Op. No. 05-0068.
[3] Id.; see also
La. Atty. Gen. Op. Nos. 05-0172 and 06-0214; Ryan M. Seidemann,Curious Corners of Louisiana Mineral Law, 23 TUL. ENVTL. L.J. 93, 102-118 (2009).
[4] John Madden, FEDERAL AND STATE LANDS IN LOUISIANA 232 (1973).
[5] La. Atty. Gen. Op. No. 96-188.
[6] Id. See also Madden, supra, at 232; Papasan v.Allain, 106 S.Ct. 2932, 2941-2942 (1986); Alabama v.Schmidt, 34 S.Ct. 301, 302 (1914); Cooper v. Roberts, 18 How. 173, 182 (1855).
[7] Madden, supra, at 149-159.
[8] Id. at 237-238.
[9] Id. at 241-244.
[10] Id.
[11] Your documentation, which is on file with this Office, contains a complete title opinion on the subject property. Absent from the opinion is any reference to a grant from a prior sovereign.
[12] Letter from A. Nate Felton, Acting Chief, Branch of Use Authorization, Bureau of Land Management, U.S. Department of the Interior, to Mark A. Pivach (Nov. 7, 2003) (copy on file with the Louisiana Department of Justice).
[13] Id.
[14] Seidemann, supra, at 19-20.
[15] Id.
[16] La.Const. Art. VI, Sec. 23; La. Atty. Gen. Op. Nos. 86-591, 01-0321, and 06-0285.
[17] See e.g.
La. Atty. Gen. Op. Nos. 01-0321 and 93-130.
[18] Id.
[19] La.R.S. 41:981; La. Atty. Gen. Op. No. 08-0118.
[20] See La.R.S. 41:801, et seq.
[21] La.R.S. 41:631.
[22] La. Atty. Gen. Op. No. 06-0214.
[23] See La.R.S. 41:716; La. Atty. Gen. Op. No. 06-0214.
[24] It is important to note that the ownership of these lands remains with the State. La. Atty. Gen. Op. No. 05-0068. However, this reality does not affect the analysis herein.